BANNISTER and others vs. PATTY'S EXECUTORS.

CONTRACTS. (1) *Building contract, payment on certificate of superintendent.* (2) *Certificate withheld by collusion, no bar to recovery.* (3) *Production of certificate excused by fraud or mistake of superintendent.* (4) *Parties may waive performance of stipulations.* (5) *Effect of part payment, etc., as a waiver of superintendent's certificate.* (6) *Stipulation that damages shall be determined by superintendent, construed.* (7) *Effect of superintendent's certificate.*

PROMISSORY NOTES. (8) *Contract for payment in, when action accrues.* (9) *Effect of waiver of notes.*

REFEREE. (10) *Practice in setting aside report.*

1. In a contract between plaintiffs and X., for the furnishing by the former of cut stone work in the erection of a building for the latter, provisions to the effect that X. should not be required to make any payment on such work until plaintiffs should produce to him the certificate of the superintendent of such building, " setting forth the

amount of stone furnished and its value, and that the same was to his satisfaction;" *held* to be valid, and to be binding on plaintiffs, unless they can show some legal excuse for not producing such certificate.

2. If the certificate of the superintendent be wrongfully withheld *by collusion* between him and X., its absence is no bar to a recovery under the contract for the materials furnished or work performed.

3. The production of the certificate may also be excused by showing that it is withheld by fraud or mistake of the superintendent, without showing collusion between him and X. *Hudson v. McCartney*, 33 Wis., 331.

4. The parties to such a contract may also *waive* the performance of any of its stipulations.

5. It appearing that X. paid more than *fifty per cent.* (and more than was due in cash) of the contract price of the stone furnished by plaintiffs to a certain date (being eight-elevenths of the whole) without requiring any certificate from the superintendent, and that he did not afterwards demand such certificates for the residue of the work: *Held*, that he thereby waived the production of such certificates.

6. The contract provided that any loss or damages to X. from unnecessary delay of plaintiffs in furnishing the stone, or from their failure to perform their contract to the satisfaction of the superintendent, should be ascertained by the latter, whose finding thereon should be binding on all parties; and that the amount so found should be " deducted from the next regular payment or payments," etc. *Held*, that under this contract all claims for the deduction of damages were to be determined by the superintendent *from time to time as the work progressed;* and such claim could not be made for the first time, and the amount thereof determined in the lump by the superintendent, a year after the work was finished, and after an action had been commenced to recover the unpaid balance for such work.

7. After eight-elevenths of the stone work had been furnished by plaintiffs, and after their alleged delay in furnishing the same which caused most of the damage here complained of, the superintendent, without alleging or claiming any damages for breach of the contract, gave plaintiffs a certificate of the amount and value of the stone work so furnished, stating the value *at the contract prices*, but not stating *in terms* that the same was to his satisfaction. *Held*,

(1.) That this must be regarded as in effect a certificate that the work was done to his satisfaction.

(2.) That at least the giving of such certificate and the payment by X. of the whole amount due in cash for such work at contract prices,

*without objection*, must be regarded as a *waiver* of all claim for damages to that date.

8. By the contract, fifty per cent. of the price of plaintiffs' work was to be paid, when the whole was finished, by three notes of X., running one, two and three years respectively. There is no proof that the *notes* were ever demanded of X., and this action for the balance claimed by plaintiffs (less than fifty per cent. of the whole contract price) was commenced less than a year after full performance of the contract on their part. *Held*, that no cause of action had accrued when the suit was commenced, and it should be dismissed.

9. The stipulation for the giving of *notes*, being for plaintiffs' benefit, may be waived by them; and after the expiration of the time for which any such note was to run, payment of the amount not being made, they may maintain an action for the sum which would be due on the note, *if it had been given.*

10. The referee in this case having reported that plaintiffs were entitled to judgment for the amount claimed, the court did not err in setting aside such report. But it should also have found the facts showing that the action was prematurely brought and should be dismissed; or it might *amend the referee's report* so as to show those facts.

APPEAL from the Circuit Court for *Dodge* County.

Appeal from an order setting aside the report of a referee. The action was brought against the testator in his life time, to recover an unpaid balance of about three thousand dollars, alleged to be due the plaintiffs on account of stone and stone work furnished by them in 1867 and 1868, for a hotel erected by the testator in the city of Fond du Lac, and known as the " Patty House." The original defendant died during the pendency of the action, and the suit was duly continued against the executrix and executor of his last will and testament, the present defendants.

The material and work were furnished and performed pursuant to a written agreement between the testator and the firm of Berry, Gilbert & Co., bearing date July 13th, 1867. Such firm was composed of the present plaintiffs and one Berry, but the latter retired therefrom in October, 1867, and transferred to the plaintiffs, the remaining partners, or to one of

them, his interest in all demands due the firm, and in the business thereof.

The complaint in the first instance was very general. It alleged full performance of the written agreement by said firm and the plaintiffs, but it did not set out such agreement or the terms thereof.

The answer contains a copy of such agreement, from which it appears that Berry, Gilbert & Co. agreed to furnish all of the cut stone and outside stone work for such hotel building, at certain specified prices or rates therefor, pursuant to certain plans and specifications prepared by one Birdsall, an architect and the superintendent of the building. Besides agreeing to furnish the stone for the first story, and for sills, water table, and belt or cornice, within four weeks, the firm agreed to furnish all of the stone as rapidly as it be might required, on the ground at the building, where directed, under the direction of Birdsall and in all respects to his satisfaction, and to obey the directions of the latter "in regard to said work, its manner of doing, time of performance, and all matters connected therewith." The contract further provided that if any of the work should, in the judgment of Birdsall, be improperly done, the same might, after notice to and neglect by the firm to repair it, be repaired or refinished by the testator, and the expense thereof deducted from the next regular payment due the firm.

The agreement contains the following provisions concerning the powers of the superintendent, and the terms of payment for the work:

"And it is further agreed that should any unnecessary delay occur in the furnishing of said stone by reason of the laches of the said parties of the second part, they shall pay to said party of the first part all damages for all loss that he may sustain by reason thereof, or other breach of the conditions hereof to be performed by said parties of the second part, or failure by them to comply with the terms hereof, or to furnish said

stone agreeable to the plans and specifications, including in such damages the expense created by reason of loss of time of workmen or other loss arising from or growing out of such delay, noncompliance or breach, or failure to perform to the satisfaction of said superintendent. All which said loss or damage they do hereby agree to pay. It being hereby agreed between the parties, that said loss and damage shall at any time be computed and ascertained by said superintendent, as the representative of all parties hereto, whose finding shall be binding on all parties. And the amount so found by said superintendent shall be deducted from the next regular payment or payments, or, if in excess thereof, the balance shall be paid by said parties of the second part to said party of the first part.

"And it is further agreed that all questions which may come, grow, or arise between the parties hereto, touching any matter herein contained or growing out of or in any way connected with the agreement hereby made between the parties, or touching the construction of any clause or portion of the agreement, shall be and hereby is referred to the decision and judgment of said superintendent, whose action and decision in regard thereto shall be binding upon all parties hereto, and shall in all respects be as implicitly obeyed as though the same were herein now written out as a portion hereof."

The agreement further provided that the testator should pay for said stone and stone work, in the manner following, to wit: "Each fourth Monday night, during the progress of said work, fifty per cent. of the value of the then necessary work furnished; and in payment of the remaining fifty per cent. said party of the first part, on the completion of all the stone work, agrees to execute and deliver to said parties of the second part his three several promissory notes, bearing date on their day of execution, drawn to their order and payable in one, two and three years respectively, each for one third the amount of said fifty per cent., with interest at seven per cent. No payment

to be made except upon the presentation to the said party of the first part, by the said parties of the second part, of the certificate of said superintendent, setting forth, in effect, the amount of the stone furnished, and its value, and that the same is to his satisfaction."

The answer further avers that the firm of Berry, Gilbert & Co. and the plaintiffs have failed to perform the agreement in respect to the quality of the stone, the work thereon, and the time of delivery and performance thereof; that they did not obey the directions of Birdsall in any particular, nor perform the work to his satisfaction, neither did the firm present to the testator the certificate of Birdsall setting forth the amount of stone provided and the value thereof, and that the same was to his satisfaction. Several items of damages by reason of such alleged breaches of the contract are specified, and it is averred that such damages amount in all to over $10,000. The answer denies that the testator failed to perform his part of such contract, denies that any sum is due the plaintiffs thereon, and avers that they have been overpaid.

The foregoing averments in the answer seem to be pleaded solely as a defense to the action. But these are followed by a second answer and counterclaim, to the effect that in August, 1869 (being after this action was commenced), Birdsall, the superintendent, after notice to the plaintiffs, made an award, in and by which he determined that the damage which the testator had sustained by reason of the failure of Berry, Gilbert & Co. and the plaintiffs to perform the agreement, was $3,728. It is not claimed that the plaintiffs appeared before Birdsall, or in any manner recognized his power to make an award in the premises.

The plaintiffs replied to such counterclaim, 1st. A general denial; 2d. That Birdsall, in collusion with the testator, wrongfully and corruptly withheld the certificate provided for and made requisite by the contract; that he did not refuse it because the work was not properly done, or because the stone

was not of the proper quality or was not furnished in due time, but because he feared that if he gave the certificate the testator would not pay what he owed him, and would make a claim against him for damages; 3d. That the payments made on account of the contract, by the testator, were all made without requiring such certificate; and 4th. That about the time the work was completed, the plaintiff called on the testator for the notes mentioned in the agreement, but that he refused to give the same, stating as the reason for such refusal that he expected a loan of money very soon, and that when he received it he would pay the whole debt.

On the trial, the referee struck out the counterclaim, and permitted the complaint to be amended by adding thereto the averments of fact contained in the reply, after the general denial therein, and also an averment that " the conditions of the contract were duly performed by the plaintiffs, except wherein they were mutually waived by the parties."

No assessment or estimate of damages caused by any failure in the performance of the agreement was made by Birdsall during the progress of the work or before this action was commenced. No certificate of the superintendent, as provided for in the agreement, was given until December 3d, 1867, at which time Birdsall certified that Berry, Gilbert & Co. had delivered at the Patty House grounds, stone of the kinds and quantities therein specified, stating the value thereof at $3,910. Such value is stated therein at the contract prices. Nothing is said in the certificate as to whether the work was to the satisfaction of Birdsall, or otherwise, and it does not appear that any use was made of such certificate. Before it was given, the testator paid on account of stone work $2,000 in cash, in five payments made between September 7th and December 1, 1867, inclusive. The whole value of the stone work at contract prices amounted to $5,546.91.

There was considerable testimony tending to prove the allegations of the answer respecting the breaches of the contract therein

charged.   There is no testimony  tending to show that the plaintiffs ever demanded of  the testator the notes specified in the agreement.

The referee found that the  agreement was performed to the satisfaction of Birdsall and  the testator ; that by making  the payments above mentioned, the testator waived the certificate ; and that Birdsall wrongfully and improperly refused to give the certificate ; also that the contract price and reasonable value of the work was $5,546.91 ; that the testator  had  paid thereon in various ways the sum of $2,982.55 ; and that  the plaintiffs were entitled to  judgment for  the balance.   The report is silent on the subject of the notes before mentioned.

The circuit court made an  order  setting  aside the report of the referee ; and the plaintiffs appealed from that order.

*Gerrit T. Thorn,* for appellants, contended that agreements to refer certain or all matters between parties cannot be pleaded in bar of an  action, nor oust the  court of its jurisdiction. They are against the policy of  the common  law, having a tendency to exclude the  jurisdiction of the courts provided by government to decide questions between litigants.   *Thompson v. Charnot,* 8 Term, 139 ;  *Mitchell v.  Harris,* 2 Ves. Jr., 129 ; *Goldstone v. Osborne,* 2 Car. & P., 550 ;  *Robinson  v.  Ins. Co.,* 17 Me., 131 ;  *Hill v. Moore* 40 id., 515 ;  *Haggart  v.  Morgan,* 4 Sandf., 198, and 1 Seld., 422 ;  *Hurst v. Litchfield,* 39 N. Y., 377.   2.  When work is done upon a special contract, and payment is to be made at a stipulated time and in  a stipulated article, as in this case notes, and the notes are not delivered, such neglect or omission changes the  contract into one for money, and the party to whom the payment was to  be  made may demand money and recover the same  by  action forthwith.   Nor is an absolute refusal to deliver or execute the notes necessary, and a refusal may be implied from  surrounding  circumstances.   *Hanna v. Mills,* 21  Wend., 90 ;  *Newman v. Mc-Gregor,* 5 Ohio, 217 ;  *Pattridge v. Gildermeister,* 1 Keyes, 93 ; *Stoddard v. Mix,* 14 Conn., 11.   3.  The retention of  the stone

when they were delivered is an admission that they were according to contract,. and to the satisfaction of the superintendent. When a purchaser accepts articles as these stone were accepted, he thereby not only waives defects, but is concluded, so that he ·can not thereafter recover for any defects in the stone at the time of delivery. *Reed v. Randall*, 29 N. Y., 358; *Ricketts v. Hays*, 13 Ind., 181; *Wilkins v. Stevens*, 8 Vt., 214; *Colby v. Town of Franklin*, 15 Wis., 311; *Thomas v. Fleury*, 26·N. Y., 26; *Sprague v. Blake*, 20 Wend., 61; *Hopkins v. Appleby*, 1 Starkie, 478; *Buford v. Funk*, 4 Iowa, 493; *Formholz v. Taylor*, 13 id., 500; *Haydon v. Madison*, 7 Me., 76; *Hayward v. Leonard*, 7 Pick., 181; *McNaughter v. Cassally*, 4 McLean, 530. Moreover, payments were made after the alleged delays in delivering the stone, and these constituted a waiver. *The Isaac Newton*, 1 Abb., 11. · Again, by the contract all damages arising from plaintiff's laches were to be found by the superintendent and deducted from the regular payments which were to be made. No such finding or deduction was ever made, and by thus passing these payments, and allowing plaintiffs to go on and deliver the stone under the contract, all damages or forfeiture were waived. *Sinclair v. Tallmadge*, 35 Barb., 602.

*Gillet & Taylor*, contra, contended that the defendants were entitled to recover of plaintiffs such damages as Patty sustained by reason of the nonperformance or imperfect performance of the contract by plaintiffs, unless the latter had been in some way released from such liability. The mere fact that Patty received and used the stone, which were delivered out of time and imperfectly dressed, is not a waiver or release of his right to damages for the nonperformance of plaintiff's contract. He was compelled to take the stone, or else suspend the erection of a costly building, to his financial ruin. 2 Smith's L. C., 31, note; *Glacius v. Black*, 50 N. Y., 145; *Smith v. Brady*, 17 id., 173; *Taylor v. Williams*, 6 Wis., 363; *Malbone v. Birney*, 11 id., 107; *Hayward v. Leonard*, 7 Pick., 181; *Smith v. Proprietors*

*of First Congregational Meeting House*, 8 id., 178. By going on with the contract after it was violated by the plaintiffs, defendants are precluded from setting up breaches of the same in bar of plaintiff's right to recover for work done or chattels delivered; but by so doing they in no manner waive their right to demand damages for breaches of the contract by plaintiffs. *Crane v. Maynard*, 12 Wend., 408; *Jewell v. Schræpnel*, 4 Cow., 566; *Longworthy v. Smith*, 2 Wend., 587. 2. This action can not be maintained until the expiration of the time for which the notes were to run; and the neglect or refusal of defendants' testator to give the notes as agreed does not make the money due on the contract. All the cases hold that the action must be brought specially for the breach of the contract in not delivering the notes, and not upon the contract for the work done. *Hanna v. Mills*, 21 Wend., 90; 4 East, 147; 9 id., 498; 2 Parsons on Con., 485. In such case the neglect to give the notes on demand does not make the money due for the work done, as the contract is not to give the note or pay the money, but is simply a contract to give the note in payment, which note is to become due in the future. As Patty was not required to give the notes, except upon a certificate of the architect, and it is admitted that no such certificate was obtained, he was not in default as to the giving of the notes, simply by neglecting to give them. In order to put him in default, it was incumbent on plaintiffs to notify Patty that the architect unreasonably refused to give the certificate, and to demand the notes without the certificate. And the fact that money had been paid during the progress of the work, without a certificate, did not entitle plaintiffs to the notes without a certificate, if required by Patty.

LYON, J. The provisions of the written contract between the testator and the firm of Berry, Gilbert & Co., to the effect that the former should not be required to make any payment on account of the stonework until the firm should produce to him the certificate of the superintendent of the hotel building,

Mr. Birdsall, containing the statements specified in such contract, are valid provisions, and binding upon the plaintiffs, unless they can show some legal excuse for not producing such certificate. All of the adjudged cases agree that if the certificate be wrongfully withheld by collusion between the owner of the building and the superintendent, the absence of the certificate is no bar to a recovery under the contract for the materials furnished or work performed. Indeed, this rule is so manifestly just and reasonable that it would be accepted at once were there no adjudications on the subject. Many of the cases hold that nothing but fraudulent collusion between such owner and superintendent will excuse the production of the certificate. But in *Hudson v. McCartney*, 33 Wis., 331, we had occasion to consider this whole subject, and we were of the opinion that the production of the certificate may be excused by proof that it is withheld by the fraud or mistake of the superintendent, even though there be no collusion between the latter and the owner of the building.

Further, there can be no doubt that it is competent for the parties to the contract, respectively, to waive the performance of any of the conditions or stipulations of the contract. It is claimed that, in this case, the testator waived the production of the certificate of Birdsall, the superintendent, by paying large sums on account of the stone work without first requiring such certificate to be produced, and by failing afterwards to demand or require such certificate for the residue of the work. It seems to us that the position is well taken. Without the certificate of Birdsall stipulated for in the contract, the testator paid the plaintiffs more than fifty per cent. of the contract price of the stone work furnished in 1867 (and about eight-elevenths of the whole was furnished in that year), thus waiving the certificate so far as that portion of the work was concerned. We think that if he intended to assert his right to a certificate in respect to the balance of the work, he should have notified the plaintiffs of such intention, and should have placed his refusal

to pay for such balance on the ground that no certificate had been furnished. Failing to do so, it must he held that he waived the production of the certificate.

We think, further, that there was an effectual waiver by the testator, of all right to recover damages for the failure of Berry, Gilbert & Co., or of the plaintiffs, to perform any of the conditions of their contract. The contract evidently contemplated that if any claim or deduction for damages for the nonfulfillment thereof by that firm should be made, the same should be determined by the superintendent from time to time as the work progressed. This seems to be the significance of the provision that such damages should be deducted from the next regular payment, etc. We find nothing in the contract which permitted the alleged damages to be claimed for the first time, and the amount thereof determined in the lump, by the superintendent, a year or more after the work was furnished, and after an action had been commenced to recover the unpaid balance therefor. Without assessing, or even claiming, any damages for breaches of the contract, and after the alleged delay in furnishing the stonework which caused most of the damages complained of, the superintendent gave the plaintiffs a certificate of the amount and value of the different kinds of stone work furnished under the contract. The certificate does not state, in terms, that the work is to the satisfaction of the superintendent, but it fixes the value thereof at the contract price, and states no objection thereto. This, we think, is equivalent to a statement that the work was done to his satisfaction. That the damages claimed by reason of delay and of defective material and workmanship, in respect to the stone work furnished in 1867, are waived by the payment of more than fifty per cent. of the contract price for such work without objection, and by the giving of such certificate, cannot, we think, be successfully denied. So far as the damages are concerned for any failure by the plaintiffs in 1868 to perform their contract, such damages are comparative-

ly trifling. There is no complaint of any unnecessary delay by the plaintiffs during that year; and if the stone delivered in 1868 was defective, or the work improperly done, the defective material or work should have been rejected, or, if accepted, an assessment of damages on account thereof should have been made by the superintendent within a reasonable time.

Our conclusion on this branch of the case is, that the plaintiffs should be allowed the full contract price of the stone work furnished the testator pursuant to the contract; the amount of which was correctly found by the referee to be the sum of $5,546.91.

But we encounter an insuperable obstacle to the plaintiffs' right to recover in this action the unpaid balance for such stone work. The contract is, that fifty per cent. of the price thereof should be paid by three notes of equal amounts, to be given therefor by the testator, due in one, two and three years respectively. There is no testimony tending to show that these notes were ever demanded of the testator. This action was commenced before either of them would have been due, had they been given in accordance with the terms of the contract. More than fifty per cent. of the contract price for the work was paid by the testator, in cash, board, etc., before this action was commenced, so that the whole unpaid balance is included in the stipulation to give the notes. It is claimed by the learned counsel for the plaintiffs, that it was not incumbent on the latter to demand the notes, but that it was the duty of the testator to tender them. The cases cited to that proposition fail to sustain it. In all of them the notes were duly demanded, and in nearly all of them the necessity of such demand in order to put the opposite party in default is clearly and distinctly recognized. Such demand, and a refusal by the testator to give the notes, were doubtless essential in this case to the plaintiffs' right of action. It was competent, probably, for the plaintiffs to waive the giving of the notes, for that was a stipulation for their benefit alone; and in that case they

could have maintained an action at the end of a year from the completion of their contract, for the installment of the unpaid balance then due. But they did not wait a year. They delivered the last stone July 9th, 1868, and commenced this action July 7th, 1869. We see no escape from the conclusion that the action was prematurely brought. We think that the referee should have so determined, and it was not necessary that he should decide the merits of the action. He omitted to find the matter in abatement of the action, but determined the merits thereof. The court very properly set aside the report, but should, we think, go further, and find as facts, that there is no evidence that the notes mentioned in the complaint were ever demanded of the testator; that this action was commenced in less than one year after the plaintiffs completed the contract; and that less than fifty per cent. of the contract price for the stone work remained unpaid when the action was commenced; and as conclusions of law, that the action was prematurely brought, and should be dismissed. Or the same result can be attained by amending the report as here indicated. R. S., ch. 132, sec. 23 (Tay. Stats., 1499, § 26).

We are aware that we might have avoided an expression of our opinion upon the merits of the controversy. But the merits have been fully and ably argued, and it was deemed advisable to state our views thereupon, to the end that the necessity for further litigation may be avoided.

*By the Court.*—Order affirmed; and, inasmuch as the whole record of the case has been sent to this court on the appeal, the cause must be remanded for further proceedings according to law.