Geiger, Appellant, vs. Ajax Rubber Company, Respondent.

*November 10—December 5, 1922.*

*Contracts: Work and labor: Duty to prosecute work: Degree of skill required: Performance: Evidence: Waiver of delay: Signing time slips: Payments.*

1. When one person contracts to perform services for another (in this case to put in operation an artesian well) and no time is specified for the completion of the work, it is the duty of the one performing the service to prosecute the work with due diligence and such degree of skill as is commonly exercised by other persons engaged in the same line of business.

2. Evidence showing that there are two methods of removing an obstruction from a deep well, one being to lift up the object causing the obstruction as a whole and the other to cut it up and raise it in pieces, and that plaintiff, after having raised the obstruction in defendant's well forty feet on the first day of the work, spent from July until December jiggling it up and down without making any further progress or attempting to cut it, is *held* to justify a judgment for defendant.

3. Where certain questions in a special verdict were, in substance, whether the plaintiff had complied with his contract, the burden of proving such performance is on him.

4. The fact that defendant's chief engineer signed weekly time slips submitted to him by plaintiff's foreman did not constitute a waiver of delay in performance, where such engineer acted merely as timekeeper and not as arbitrator to accept or reject work.

5. Where the obstructions were not removed from the well by plaintiff, so that there were no benefits received by defendant, a payment to plaintiff made by defendant in the hope that litigation might be avoided was not a waiver of objections as to the manner or time of performance.

APPEAL from a judgment of the circuit court for Milwaukee county: E. C. HIGBEE, Judge. *Affirmed.*

Action to recover $2,290.96, balance alleged to be due plaintiff for services rendered in putting into operation an artesian well owned by defendant. The well in question was 1,712 feet deep, and the water was used chiefly by the company for cooling rubber during certain stages of the manufacture of tires. It appears that in May, 1919, the company attempted to install an air lift in the well in order to increase the flow and that through an accident the air-lift apparatus was lost in the well together with 160 feet of six-inch and 175 feet of two-inch pipe attached thereto. Further facts are clearly stated in the decision of the trial court, in part as follows:

"This material was lodged at a shoulder that existed in the well at a depth of 1,210 feet from the surface of the ground, at a point where the hole was cased off with extra heavy eight-inch pipe. After making some attempts to recover this equipment from the well, the defendant applied to the plaintiff for expert advice in respect to the manner in which it might be recovered and solicited him to submit a proposition for doing the work of removing this equipment and material from the well. It was disclosed to and made known to the plaintiff that there was urgent need for the performance of this work, and it was important for the defendant to have the use of the cold water from this well for use in their business.

"On the 30th of June, 1919, the plaintiff submitted a written proposition for the doing of the work, which was accepted by Mr. Vance, as vice-president of the company. . . . By the terms of this contract the plaintiff was to furnish a well-digging outfit and two men to operate the same, the defendant to furnish the power, the oil and light for its operation, and in addition to paying all expenses for the transportation of such outfit and setting the same up, taking the same down, and transporting it back to plaintiff's place of business, were to pay the plaintiff $3.50 per hour for the time of the two men and outfit and $1 per hour for any extra labor furnished.

"It was established by the evidence in the case that there are just two well recognized methods of performing such a job as the plaintiff undertook to do: one is to grapple with the obstruction and lift it from the well as a whole; the other is to cut it up and take it out in pieces.

"The evidence further establishes beyond controversy that the proper method of procedure is to first determine whether the obstructions can be lifted out under the first stated method of procedure, as it is agreed that such method is preferable if practicable. And it is further established that after determining that it cannot be lifted from the well, then to proceed to cut it up and remove it in pieces. It was further established by the testimony of the plaintiff himself that it would not require more than 300 hours to have removed these obstructions from this well by the second method, that is, by cutting it up and taking it out in pieces with the equipment that he there provided and used upon the job, with two men to operate the same.

"The plaintiff commenced the work upon the job in July; the evidence does not disclose the precise day when the plaintiff in fact first attempted to lift the obstructions, but it was in the month of July. In that first day the plaintiff lifted the obstructions forty feet, beyond which point it could not be moved. It was then let down and lifted again and let down and lifted again, and that operation continued for days, weeks, and months, and until some time in December, when the cable with which the plaintiff was lowering and lifting the obstructions broke, letting a large amount of the plaintiff's equipment drop into the well, adding a very considerable obstruction to that which was already in the well; and at no time during the four and a half months when the plaintiff was jiggling the obstruction up and down in the well was he able to advance the obstruction above the forty feet which he raised it on the first day that he grappled with the same in July. The plaintiff and his foreman both concede that during the entire period of their work upon the well they accomplished absolutely nothing towards the removal of the obstructions, but they contend that all of this time was necessary to be used to enable them to determine whether the obstructions could be lifted and whether they would be required to resort to the cutting of the material.

"The bill which they presented, and which they claim a right to recover, was for 1,300 hours at $3.50 per hour and 501 hours at $1 per hour—$5,051.

"On December 20th the defendant ordered the plaintiff to remove his equipment from the premises, and after he had done so they employed a Mr. Gray of Milwaukee to remove the obstructions. . . .

"The crucial question is whether the plaintiff was justified to continue to lift the obstruction up and down in the well from in July until in December in an endeavor to determine whether or not he should resort to the cutting of the material. Mr. Gray, the expert on behalf of the defendant, testified that forty-eight hours would be the outside limit of time during which a contractor would be justified in experimenting to determine that question.

"Some pretense was made on behalf of plaintiff that he was justified in spending all of these weeks and months in so doing to save the value of the pipe and material lost in the well; but a reference to the time sheets, which are in evidence, shows that his bill for labor for a single week exceeded the value of the material which he was attempting to recover."

The special verdict consisted of seven questions. The first three were answered by the court to the effect that 1,300 hours of work were rendered by the plaintiff with an outfit and two men; 500 hours as extra labor; that the contract price of this labor and other charges was $5,138.96; and that of this amount the defendant had paid $3,000. The other questions and answers were as follows:

"(4) Did the plaintiff furnish a rig and tools reasonably fit and suitable for performing the work which he undertook to perform under the contract? A. Yes.

"(5) Did the plaintiff furnish and maintain on the job reasonably competent and skilful men to perform the work he undertook to perform under the contract? A. Yes.

"(6) Was the work prosecuted by the plaintiff in a good, workmanlike manner and with such care, skill, and diligence as are ordinarily exercised by men engaged in plaintiff's line of work? A. No.

"(7) If you answer question 6 'No,' then answer this question: Given a suitable and adequate equipment and

reasonably competent and skilful men to operate it, and assuming the work to be prosecuted with reasonable care, skill, and diligence, what length of time (computed in hours) was reasonably required and sufficient to enable the plaintiff to remove the obstructions from the defendant's well? *A.* 2,000."

Judgment was ordered for defendant notwithstanding the verdict and the complaint dismissed.

For the appellant there was a brief by *Bloodgood, Kemper & Bloodgood,* attorneys, and *Emmet Horan, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Horan.*

For the respondent there was a brief by *Simmons, Walker & Wratten* of Racine, and oral argument by *John B. Simmons.*

JONES, J.    The plaintiff testified that with the two men and the outfit he had on the job he could easily have removed the obstruction by cutting it in sections, after the time he was ordered off, within five weeks' time working ten hours a day—that is, within 300 hours.    The trial court agreed with the sixth answer of the jury that the work was not performed in a good, workmanlike manner and with such care, skill, and diligence as are ordinarily exercised by men engaged in plaintiff's line of work, but decided that the answer to the seventh question was entirely inconsistent with the answer to the sixth and that it was entirely unjustified by the evidence.    It was further held that there must either be a new trial or that judgment should be awarded notwithstanding the verdict, and, since it was not probable that new evidence could be produced throwing light on the situation, judgment was directed for defendant.

It is urged by counsel for appellant that there was no inconsistency between the answers to the two questions, and, if they are inconsistent, that the latter answer, being to a more specific point, should control the former.    It is con-

ceded by counsel for both parties that question No. 7 is not as definite as it might have been as to what would be a sufficient crew. Counsel for plaintiff argue that the jury considered that a crew of two men was an adequate crew.

During the trial two terms were used in this connection, namely, "rig hours" and "man hours," and it is claimed by counsel for defendant that the jury probably had "man hours" in mind and concluded that 2,000 hours would have been sufficient. In the brief of plaintiff's counsel there is an elaborate and very ingenious argument that the jury accepted the time already spent by plaintiff when he was ordered to quit as time diligently and properly spent, and considered the additional time which would have been necessary to remove the obstruction from the well by cutting and removing the pipe and the necessary preparations therefor, and by this process made their estimate of the 2,000 hours. Counsel for the defendant maintain that if this view of the manner in which the jury reached its result in the seventh question is adopted the figures show that the labor cost would be about $7,000, while labor cost charged by plaintiff was $5,050, and that after making full allowance for the completion of the job, based on plaintiff's own testimony, there would be a balance of $900 more than the contract price for the labor performed and to be performed to complete the job.

It is evidently impossible to determine the exact process by which the jury reached their conclusion in answering the seventh question. There is no ambiguity in the sixth question or the answer. In the answer to this question the word "workmanlike" does not stand alone: it is joined with the words "care, skill, and diligence." By their answer the jury found that proper methods and practice and diligence had not been used in the conduct of the work. This was not negatived by the other findings that proper equipment had been used and competent men employed, since there was considerable evidence to the effect that, on com-

plaints being made, the plaintiff himself had not taken proper steps to expedite the work.

No time was specified in the contract for the completion of the work, and it is conceded by defendant's counsel that plaintiff was entitled to have a reasonable time for that purpose. On the other hand, it was the duty of plaintiff, implied in his contract, to prosecute the work with due diligence and such degree of knowledge and skill as is commonly exercised by other persons engaged in the same line of business. Bishop, Contracts (2d ed.) § 246; 13 Corp. Jur. 560.

It is our view that, whether the theory of plaintiff's counsel or that of defendant's counsel be adopted, the two answers are inconsistent, and that on that point there was no error in the decision of the trial judge. We also consider that there was not credible evidence to support the answer to the seventh question even if the theory of plaintiff's counsel is adopted. From some time in July until December 20th plaintiff was attempting to lift the obstructions. On the first day they were raised forty feet, but after that no progress whatever was made. The plaintiff was an expert in this kind of work, including the two methods generally adopted. The defendant and its engineers had no such experience and could only rely on the plaintiff's judgment.

It is claimed by plaintiff's counsel that this kind of work is attended with many difficulties and uncertainties and that contracts relating to it should be liberally construed. This may be conceded, but we cannot adopt the view that plaintiff, as an expert, responsible for the use of due diligence, was justified in continuing the experiment for nearly five months without making the slightest progress. Nor does it seem to us an adequate explanation that he was trying to save the equipment of which the obstructions consisted. The testimony showed that it was not of as much value as the price of one week's work.

It is urged by plaintiff's counsel that the trial court relied too much on the testimony of the expert Gray as to the amount of time which should have been used before resorting to the method of cutting the obstruction. But it appears from the decision and the testimony that the court based the ruling on that subject not only upon the opinion of the expert but also on the evidence given by plaintiff.

Exception was taken by plaintiff's counsel because the court charged the jury in respect to the first three of the four questions submitted to the jury that the burden of proof was on the plaintiff. Cases are cited in this connection where defenses of warranty and guaranty were pleaded. In this case the questions were in substance whether the plaintiff had complied with the contract he had made, and to prove such performance the burden was on him. *Froelich v. Christie,* 115 Wis. 549, 92 N. W. 241; *Western H. Co. v. Schmidt,* 56 Wis. 681, 14 N. W. 822.

The following clause was part of the contract:

"The foreman of the job is to have all time sheets signed by some one in authority of the *Ajax Rubber Company,* each week, and these time sheets will determine the amount of time or the number of hours to be charged."

Mr. Karlson was the chief engineer of the defendant, and during the time in question he signed the weekly time slips submitted to him by the foreman of plaintiff. It is urged by counsel for appellant that defendant thereby waived objection to the time of performance, and that the acts of Karlson in this respect are conclusive on defendant and establish the amount of time to be charged. On this point counsel cite cases in which it was stipulated between the parties that payments should be made according to the calculations or estimates of a third person, or where the cost should be so determined, or where other facts were to be found by an arbitrator. In this class of cases the terms of the contract justified the conclusion that the parties had

agreed to submit matters about which there might be dispute to the judgment and discretion of the third person as arbitrator.  Karlson was not an expert in this line of work and was not required to accept or reject work but only to certify to the correctness of the time sheets submitted by the foreman of plaintiff.   The trial court correctly held that he was a timekeeper and not an arbitrator between the parties.

It is claimed that defendant waived any objection to the time or manner of performance by failing to make complaint as to the delays, and cases are cited in which buildings have been constructed and defenses have been interposed, and where recovery was allowed on *quantum meruit*.   In the case before us defendant received no benefit whatever, but lost valuable time in the use of a well much needed in its business.   Moreover, the testimony shows that frequent complaints were made and the defendant was often assured that the desired result would soon be accomplished.

It is also claimed that "defendant waived any right to object to the manner or time of performance by the plaintiff, by the payment of $3,000 on March 1, 1920, without objection," and appellant's counsel cite on this point *Bannister v. Patty's Ex'rs,* 35 Wis. 215.   This was another case where the owner had had the benefit of the work done on the buildings although defects and delay were claimed. It was held that the owner had waived the production of certificates of the superintendent, although the contract contemplated that any claim for damages should be determined by the superintendent as the work progressed.   We do not consider that the facts in that case are at all similar to those in the one before us.   Here there were no benefits received and no acceptance of a job.   The defendant paid the $3,000 possibly hoping to avoid litigation and assuming that it was as much as plaintiff was entitled to receive.   We do not think under all the circumstances that it thereby waived the defense made.   The trial court stated the mode by which the conclusion was reached as follows:

"It is my judgment that the time expended by plaintiff in attempting to determine whether he could remove the obstructions by lifting them was unreasonably long as a matter of law; that any time expended in excess of 100 hours, at an expense to the defendant of $350 in addition to fuel, lubricating oil, and light, would be unreasonable. Adding to that 300 hours, in which the plaintiff himself says he could have removed all the obstructions, including the obstructions which he himself had dropped therein, and 100 hours for loading and setting up the equipment and taking it down, would, in my judgment, constitute the utmost that he would be entitled to claim had he completed the work he undertook to perform, conceding he acted in perfect good faith in the matter, and there is some quite persuasive testimony that the work was intentionally prolonged for the profit in the undertaking. These 500 hours at $3.50 an hour would amount to $1,750; add to that the 501 hours extra labor at $1 an hour would make $2,251, and add to that the expense of transportation of the outfit would still leave the plaintiff overpaid by several hundred dollars, even had he removed the obstructions, by the voluntary payment of $3,000, which the defendant made to the plaintiff before the commencement of the action."

With that conclusion we agree.

*By the Court.*—Judgment affirmed.