## CHARLESTON.

POWELL *et al. v.* DAWSON, Secretary of State.

Submitted Sept. 26, 1898—Decided Jan. 19, 1899.

1. CORPORATIONS—*Mandamus—Baptist Missionary Society—Charter.*
   The secretary of state will not be compelled by *mandamus* to issue a charter of incorporation to several persons who agree to become a corporation by the name of the "Baptist Missionary Society of West Virginia," for the purpose of promoting religion by aiding in the support of Baptist ministers engaged in preaching the gospel, and by aiding in the erection of houses of worship on missionary fields in West Virginia, and by collecting and disbursing funds for these purposes.　(p. 783.)

2. CORPORATIONS—*Incorporation of Church—Constitutional Law.*
   Granting a certificate of incorporation upon the presentation of such an agreement would, in effect, be incorporating the church the parties represent, and contrary to the provisions of the Constitution and statute.　(p. 784.)

Application by W. E. Powell and others for a writ of *mandamus* against W. M. O. Dawson, Secretary of State.

*Writ Denied.*

DAVID D. JOHNSON and MERRICK & SMITH, for petitioners.

EDGAR P. RUCKER, ATTORNEY GENERAL and EDWIN M. KEATLEY, for respondent.

ENGLISH, JUDGE:

On the 13th day of January, 1898, W. E. Powell and six others entered into a written agreement in the form prescribed by section 32 of chapter 54 of the Code, for the purpose of forming a corporation by the name of the "Baptist Missionary Society of West Virginia," for promoting religion by aiding in the support of Baptist ministers

engaged in preaching the gospel, and by aiding in the erection of houses of worship on missionary fields in this State, and by collecting and disbursing funds for these purposes, which corporation was to keep its principal office at Parkersburg, W. Va., in the County of Wood, and the same was to expire on January 1, 1940, which agreement set forth the amount subscribed to be four hundred and fifty dollars, and that forty-five dollars had been paid in, and stated that the subscribers desired the privilege of increasing the capital, by the sale of additional shares from time to time, to fifty thousand dollars in all, the shares to be fifty dollars. This agreement was properly signed, sworn to, and acknowledged, and filed in the office of W. M. O. Dawson, Secretary of State, on January 20, 1898. On the 28th of January, 1898, said Secretary of State refused to issue the charter applied for, stating that he was advised by the Attorney General that it would be illegal to issue a charter on said agreement. On February 8, 1898, said W. E. Powell and six others presented their petition to this Court verified by affidavit, together with exhibits, praying for a writ of *mandamus* to be directed to the Honorable W. M. O. Dawson, Secretary of State for West Virginia, to require and compel him to issue to said petitioners a certificate of incorporation declaring them to be a corporation in the name of the "Baptist Missionary Society of West Virginia;" and it appearing to the Court that the petitioners had on January 20, 1898, filed with said Secretary of State the agreement above mentioned, and had requested him to issue to them a certificate of incorporation as therein set forth, which he had refused to do, a *mandamus* was awarded, to which said W. M. O. Dawson, Secretary, etc., filed his answer, in which he admitted the facts above stated as to the filing of the agreement by said parties in his office for the purpose of obtaining a charter, which agreement complied with the statute, sworn to and acknowledged, but that he was advised, believed, and so answered that he has no authority, under the Constitution and laws of this State, to issue a certificate to the petitioners for the purposes set forth in said agreement, but is advised and so answers that the issuing of such a certificate of incorporation is in plain violation of the Constitu-

tion of West Virginia, as particularly set forth in section 47 of article VI, and that it is by reason of the inhibition of the Constitution aforesaid that he refused to issue said certificate. He admits that he did on January 28th refuse to issue said certificate, and still refuses, because it would, in his opinion, be contrary to the Constitution of the State so to do; wherefore he prayed judgment, and that he might be hence dismissed, and not required to perform the mandate of the alternative writ of *mandamus* aforesaid.

The question presented by this record is whether the Secretary of State was warranted in refusing the certificate of incorporation applied for by the petitioners. Can we sanction this action under section 47 of article VI which provides that "no charter of incorporation shall be granted to any such church or religious denomination," or under section 3 of chapter 54 of the Code, which provides that "this chapter shall not be construed to authorize the incorporation of any church or religious denomination, or of any company the object, or one of the objects of which is to purchase lands and resell the same for a profit?" The proposed corporation was to be known as the "Baptist Missionary Society of West Virginia." Its object, as set forth in the agreement, was to promote religion by aiding in support of Baptist ministers engaged in preaching the gospel, and by aiding in the erection of houses of worship, etc., and by collecting and disbursing funds for these purposes. Now, can we regard this in any other light than an attempt on the part of the Baptist Church to do indirectly through others what the Constitution and law expressly inhibits? There is no purpose expressed in this agreement which can be regarded otherwise than one of the prime objects of the Baptist Church. The first purpose is to promote religion by aiding in the support of Baptist ministers engaged in preaching the gospel. That this is one of the main objects of the Baptist Church, and in fact any other church, with respect to its ministers, needs no argument to sustain it. The church must have ministers, or it cannot prosper. The next purpose is to aid in the erection of houses of worship in missionary fields; and it is at once conceded that any denomination must have houses of worship, where its members may as-

semble and hear the gospel proclaimed; otherwise, its work languishes and its success is defeated.   The last object mentioned in said agreement, and perhaps not the least, has for its 'purpose collecting and disbursing funds for these purposes, and then the agreement expresses the general purpose of promoting religion.

Counsel for the petitioners, in their brief, state that petitioners are not a church or religious denomination, though they do not seek to hide the fact that their work is to be solely in the interest of the Baptist denomination of the State, and state that, under Baptist church government and policy, there is no church organization or authority beyond the local church, each local society being entirely independent.   Conceding this to be so, let us inquire what would be the effect if six or seven of the members of each local Baptist church should enter into a similar agreement to the one presented by petitioners to the Secretary of State, and, on presentation, a charter should be granted them.   Is it not apparent that in this way the Baptist Church in the State of West Virginia, through the intervention of such stockholders, would indirectly be allowed to do what, under the Constitution and the statute, it is not allowed to do directly, and the spirit and intent of the law be thus evaded and defeated?   Corporations thus formed could be regarded in no other light than the agents of the Baptist Church, and each local Baptist Church, the members of which were thus incorporated, so far as benefits and privileges were concerned, would occupy precisely the same attitude and derive the same advantages as if the local church itself was incorporated.   In the case of *Gallego's Ex'rs.* v. *Attorney General,* 3 Leigh. 450, Tucker, President, after reviewing the history of legislation with reference to church property and charitable bequests, on page 477 says: "No man at all acquainted with the course of legislation in Virginia can doubt for a moment the decided hostility of the legislative power to religious incorporations.   Its jealously of the possible interference of religious establishments in matters of government, if they were permitted to accumulate large possessions, as the church has been prone to do elsewhere, is doubtless at the bottom of this feeling.   The legislature knows, as was remarked

by counsel, that wealth is power. Hence the provision in the bill of rights; hence the solemn protest of the act on the subject of religious freedom; hence the repeal of the act incorporating the Episcopal Church, and of that other act which invested the trustees appointed by religious societies with power to manage their property; hence, too, in part, the law for the sale of glebe lands; hence the tenacity with which applications for permission to take property in a corporate character (even the necessary ground for churches and graveyards) have been refused. The legislature seems to have been fearful that the grant of any privilege, however trivial, might serve, but as an entering wedge to greater demands."

The law under which this controversy arises descended to us from the state of Virginia. In the constitution of that state (Const. 1851, Art. IV, s. 32) it was provided that "the general assembly should not grant a charter of incorporation to any church or religious denomination, but might secure the title to church property to an extent to be limited by law;" and the same, in substance, is found in the Constitution of this State (Art. VI. s. 47). It is not our province to pass on the propriety of the law, but to construe and apply it as we find it. It is contended that a corporation formed for the purposes set forth in the agreement signed by the petitioners would be neither a church nor a religious denomination; but if they assume the duties of the Baptist Church in their locality, promote religion by aiding in the support of Baptist ministers engaged in proclaiming the gospel, by aiding in the erection of houses of worship, and by collecting and disbursing funds for these purposes, it makes little difference what name they may assume; they take upon themselves the main duties, responsibilities, and avowed objects of the church, and thus become the right hand of the church they represent. In my opinion, if the charter they ask for were granted, it would afford this church and every other church, of whatever denomination, an easy means of evading the law, and would, in effect, be granting a charter to the church. For these reasons, the peremptory *mandamus* is refused, and the petition dismissed.

*Writ Denied.*