# CHARLESTON.

## PLUMBING CO. *v.* CARR.

### Submitted June 4, 1903—Decided November 28, 1903.

1. CONTRACT.
   A contract for putting in the plumbing and heating works of a house provides for partial payments for the work, and provides that "the final payment shall be made when the work is completed satisfactory to owner and architect." This gives the owner or architect absolute right of rejection of the work for defect or incompleteness, and his reasons for rejection can not be ignored, if in good faith and not fraudulent. (p. 273).

Appeal from Circuit Court, Marion County.

Action by the Fairmont Plumbing Co. against Lydia E. Carr. Decree for plaintiff for less than the amount claimed, and it appeals.

*Affirmed.*

C. H. LEEDS, for appellant.

W. S. HAYMOND, for appellee.

BRANNON, JUDGE:

The Fairmont Plumbing Company and L. E. Carr entered into a written contract by which said company contracted to construct and complete a plumbing system and hot water heating plant in a certain house belonging to said Carr in Fairmont for a

certain price. Said Carr paid part of the sums agreed, but refused to pay the balance claimed by the company because of alledged failure of the company to complete the work according to the contract, and the company filed a mechanics lien and brought a chancery suit to enforce it for the balance claimed under the contract and for some extra work. A decree allowed the company $32.87 for some "extra," but denied relief for the balance of extras and denied any relief for the balance claimed for work under the contract, without prejudice to another suit, and the company appeals.

I will not argue the case upon the volume of depositions of conflicting evidence. As in other cases several times stated the design in requiring of this Court written opinions is not to detail evidence going to establish facts, but to state ultimate facts, so far as necessary to make intelligible the principles of law ruling the case. The judge of the circuit court found that the execution of the contract was delayed to the damage of the defendant, and also that the work was never completed as demanded by the contract, and its execution defective. We cannot upon conflicting evidence reverse this finding. I regard the finding correct. But if this were not so, there is a legal principle which would affirm the decree. The contract provides for partial payments during the execution of the work, and then says, "The final payment shall be made when the work is completed satisfactory to owner and architect."

The owner and architect condemned the work as incomplete and defective and complained of delay; they both expressed dissatisfaction with it repeatedly; the architect refused to give an order for final payment; and both owner and architect, under oath as witnesses, continue to express dissastifaction and say that the work was delayed to the loss of the defendant, ill-executed and incomplete. It does not appear that this dissatisfaction of owner and architect was fraudulent or collusive, but I think well grounded. Under the clause of the contract just stated, upon authorities given in *Barrett* v. *Coal Company,* 51 W. Va. 416, the decision of the circuit court must stand.

Decree affirmed.

### ON REHEARING.

A petition for rehearing calls for an extension of the above opinion. That the principle stated in it is sound as regards sale

or manufacture of chattel articles, as machines, clothing, portraits and the like, is not contested; but it is said the clause of the contract, "the final payment shall be made when the work is completed satisfactory to owner and architect," cannot apply to construction of a building or fixtures therein. It is said that mere chattels can be kept by the seller or manufacturer, or returned, whereas in the other case, the owner of the house gets the work without pay. It is a sufficient answer to say, there is the contract; the parties have made it themselves applicable to the construction of these fixtures. The court cannot disapply it to this subject when the parties have by their own act applied it. Those words are in this very contract. Can a court strike them out? Can a court take from Mrs. Carr a sedate clause made for the purpose of protecting her from an imposition very common, bad construction? Is it a hard case? It may be; but the builder, to get the contract, took the risk of saying "Give me the contract and I will execute it to the satisfaction of yourself and the architect." This clause means something. It means more than the law would say, if it were not in the contract. Then whether the work was completed according to the contract would be a question for the decision of the law; but this contract leaves it to the owner and architect.

Now to the authorities. Whilst some what variant, the weight of them supports this view. In 6 Cyc. 88 we find it stated that it has been held by eminent courts that in special building contracts the builder cannot recover anything, unless he has performed the work according to contract; but that the later rule is not to allow the owner to keep the work and not pay anything, but recovery of the real worth of the work done may be had by showing substantial performance; but this is added: "The doctrine, however, of 'substantial performance' does not apply when the omissions or departures from the contract are intentional, or so substantial as not to be capable of remedy, so that an allowance out of the price would not give the owner what he contracted for, *or where the contract must be performed to the satisfaction of the owner or architect.*" Note, that the last clause makes such a contract as we have in hand an exception from the rule of "substantial performance." Why? Because so the parties wrote their contract, and courts cannot *make* a new or different one. This contract is in this respect not different from

those where payment is to be made upon the certificate of an architect, engineer or other person that the work has been done according to contract, unless this contract is stronger in favor of the owner of the building, as perhaps it is, since it leaves it to the mere *satisfaction* of the owner and architect. In Wharton on Contracts, section 594 we find this: "Building contracts often contain the provision that the owner shall not be liable to the builder until the work has been approved by the architect employed; and this provision, when the builder takes the work subject to it, and when the architect acts as an independent arbiter between the parties, will be strictly enforced. The owner has no right to complain, since the architect was selected by him, and charged by him with this very power; the builder has no right to complain, since he took the work on this very condition. No matter how arbitrary may be the action of the architect in refusing to give the certificate required by the contract, yet, if he persist in his refusal, the builder cannot recover on the contract price. It is otherwise when the architect in collusion with the owner refuses to give the certificate, in which case the owner and the architect may together be liable in an action for conspiracy, or the owner may be made liable on the contract being estopped by his own fraud from setting up the refusal of the architect to certify." In Clark on Contracts 66 we find: "Again a promise may depend upon the act of the promissor or of some third person. For instance, it may be made a condition precedent to one party's liability under the contract that he shall approve of, or be satisfied with the other party's performance; and in such a case, by the weight of authority, he cannot be compelled to accept the other party's performance, and perform his part, unless he is satisfied. Examples of such a condition occur in contracts for the manufacture and sale of goods, or for services, where the buyer's or master's liability to pay is made to depend on his being satisfied with the goods or the services. Other examples are in the case of promises to pay for the construction of a building or of a railroad, or for any other construction work, conditional upon the approval and certificate of the architect, engineer, or other third person. In such cases payment cannot be enforced without such approval unless there is fraud, or such gross mistake as to necessarily imply bad faith." Hammon on Contracts, section 466 says: "Conditions precedent may

be regarded as vital or suspensory. A vital condition precedent is one whose non-performance discharges the contract. A suspensory condition precedent is illustrated where a promise is made to depend upon the act of a third person, as in the case of a promise in a building contract to pay for the work upon receiving a certificate of approval from the architect.' * * 'In all these cases,' says Sir William Anson, 'it would appear that an action brought before the fulfillment of the condition would be brought prematurely; and though neither the non-fulfillment of the condition, nor the action brought before it was fulfilled, would discharge the contract, the condition suspends, according to its terms, the right to the performance of the promise.' "

Chitty on Contracts, 833 says: "If a railway company agree to pay a certain price for work, which is to be done to the satisfaction of their engineer; or if a building agreement contain the usual clause that the party will pay upon receiving the architect's certificate that the work has been done to his satisfaction —the fact of the work having been done to his satisfaction in the one case and the obtaining a proper certificate in the other, is a condition precedent to the right to receive payment." Addison on Contracts 576, and Beach on Contracts section 105 are to same effect. Such is the law as the text writers construe the cases. Turn to some authortative cases. *Sweeney* v. *United States,* 109 U. S. 618. A man contracted with the government to build a wall around a cemetery, the contract saying that when inspected by an engineer and he "shall have certified that it is in all respects as contracted for, it shall be received and become the property of the United States." *Held,* "that if there is no fraud, nor such gross mistake as would necessarily imply bad faith, nor failure to exercise honest judgment, the engineer's certificate is a condition precedent to payment." The same doctrine held in *Martinsburg & Potomac R. Co.* v. *March,* 114, U. S. 549. See *Chicago &c* v. *Price,* 138 U. S. 185. A man agreed to put in a building an elevator "warranted satisfactory in every respect." The lower court instructed that if it was reasonably fit, and that if the defendant ought to have been satisfied with it, the plaintiff could recover; but the Supreme Court held that the contract meant that the elevator was to be satisfactory to the defendant, "and while it could not be rejected for mere caprice, yet a *bona fide* objection by him to its working was a sufficient

defence." *Singerly* v. *Thayer* 108 Pa. St. 291, 2 Atl. 230. Same
in *Kennedy* v. *Poor,* 151 Pa. St. 472, 25 Atl. 119. So *Glaciers*
v. *Black,* 50 N. Y. 145. In *Hennessy* v. *Metzger,* 152 Ill. 505, 43
Am. St. R. 276, we find it held that where a building contract pro-
vides that the architect shall pass upon the work and certify upon
the payment to be made, his decision is a precedent condition to
require payment, and action does not lie in its absence. In *Kane*
v. *Stone Co.,* 39 Ohio St. 1, upon a contract to build a house
"subject to the approval of an architect," it was held that "if
such architect, acting in good faith, fails and refuses to approve
the work in any form, the general rule is that the contractor
cannot recover." In *Pormann* v. *Walsh,* 97 Wis. 356, was a build-
ing contract by which the contractor agreed to perform the work
to the "satisfaction of the architect and to the satisfaction of the
owner"—just this case. It was held to be "binding on the con-
tractor, and that the owner might withhold his approval or satis-
faction with the work so as to defeat a recovery of payment, pro-
vided he does not do so unfairly or capriciously." In *Bradner*
v. *Roffsel,* 57 N. J. Law, 412, was a building contract requiring
payment upon a certificate of an architect that "the work is done
in strict accordance with drawings and specifications, and that
he considers payment properly due." The trial court charged
the jury that the architect's certificate could be dispensed with
only by proof that it was withheld by fraud on his part, and that
"it would be *prima facie* evidence of fraud, if the architect with-
held his certificate without any substantial reason." The Su-
preme Court held this charge erroneous, because the use of the
word "substantial" tended to substitute the judgment of the
jury for the decision of the architect. The court also said: "In
*Chism* v. *Shipper* the chief justice carefully pointed out the need
of the watchful supervision over the determination of juries on
this question, and declared that the architect's conduct could not
be impeached for want of knowledge, or because his judgments
do not agree with those of others. To instruct a jury that they
may find fraud from the withholding of such certificate without
a substantial reason is to permit them to determine what are sub-
stantial reasons, and if in their judgment there are none, then,
though the architect's judgment may be honestly otherwise, to
convict him of fraud." See where the adverse proposition
leads. A man is going to build a house or put in heating and

plumbing apparatus. He is incapable of judging the work, and the contractor agrees to submit the work to the judgment of an architect, and that the final payment shall only be called for when that architect approves it. The architect does not approve it. Then the jury or the judges on the circuit and Supreme benches, who can not fitly judge the work when they hear the evidence or read the record, are to say that there was in fact substantial compliance with the contract, that the architect ought to have given his certificate. What becomes of the usual, necessary provision that the architect shall judge the work, a provision carefully inserted to protect the owner against the imposition, so often practiced, of bad construction? What becomes of the utility of the contract? What the use of a solemn contract? In *Butler* v. *Tucker*, 24 Wend. 447, a man agreed to get stone for a building "to the entire satisfaction of the other party and third persons." The court held that he must "allege and prove that the work was done to the satisfaction of the arbiters." The opinion said: "The plaintiff not only agreed to furnish and deliver granite of a particular description, and execute the work in a specified manner, but he also stipulated that the whole should be done and completed to the entire satisfaction of the building committee. It is not enough for him to say that he has performed the agreement in other respects, without also alleging that he has done it to the satisfaction of the arbiters agreed on between the parties. *Worsley* v. *Wood*, 6 T. R. 710 ; *Delaware & H. Canal* v. *Dubois*, 15 Wend. 89 ; *Morgan* v. *Birnie*, 9 Bing. 672 ; *U. S.* v. *Robeson*, 9 Peters 319 ; 1 Chit. Pl. 312." *Chism* v. *Shipper*, 14 Am. St. R. 668, 674, recognizes the doctrine that when such certificate is required by the contract, it must be furnished in the absence of fraud.

There being no difference in this respect between contracts touching chattels and building contracts, I feel authorized to repeat the statement in the original opinion, that in the application of the clause that the work should be satisfactory to the architect, the cases of *Barrett* v. *Coal Co.*, 51 W. Va. 416, and *Osborne* v. *Francis*, 38 *Id.* 312, are binding authority. I will add that I can not see any logical difference, in principle, between the case before us, and the case where the certificate or decision of an engineer is made by the contract final and conclusive as to the completion of the work, or its character, or even its quantity. He

is made the arbiter in both cases. In *Condon* v. *Railroad Co.,* 14 Grat. 302, the contract provided that an engineer should inspect the work, and "determine when the contract is complied with according to its fair interpretation * * and his decision shall be conclusive between the parties." It was held that such a contract was valid and the decision of the engineer conclusive, and that his final estimate was a condition precedent to recovery. I think that case especially is authority in this case, as it covered the character of the work.

A unmber of cases lay down this principle. *Kidwell* v. *Railroad Co.,* 11 Grat. 676; *B. & O. R. Co.* v. *Polly Woods,* 14 *Id.* 447; *Chicago R Co.* v. *Price,* 138 U. S. 185; *Kilberg* v. *U. S.* 97 U. S. 398.

There are some cases adverse to the position taken in this opinion, but not many or sound. Some seeming to be such on first blush are not when scrutinized. I now refer to some cases cited for the Plumbing Company. In *Pope Iron Co.* v. *Best,* 14 Mo. App. 502, the contract guaranteed "the furnace to work satisfactorily." The court said that did not mean that it would work to satisfaction of the defendant, but to work reasonably well. A great difference. The contract was satisfied if the furnace worked well in the opinion of the jury. That is only the usual contract. This contract says the satisfaction of the defendant and architect must be attained, not that of a jury. *Shupe* v. *Collender,* 15 Atl. 405, has no application. It only holds that where a purchaser of an article is not satisfied, this does not disable him from keeping it and recouping the price for defect under the warrant. *Hawkins* v. *Graham,* 14 Am. St. R. 422, does not fit this case. The contract said that the heating apparatus should be of first class workmanship, and in "the event of the system proving satisfactory", to be paid for, not saying proving satisfactory to the plaintiff; and further, it added the words "or the work demonstrated." The court said this offered an alternative; that is, it let in proof of the sufficiency, and did not limit to the defendant's approval. *Carrol* v. *Welch,* 26 Texas 147, involved no clause such as does this case; nor did *Nelson Co.* v. *Mitchell,* 38 Mo. App.; nor *Fleshman* v. *Miller, Id.* 177. *Chism* v. *Shipper,* 51 N. J. Law 1, 14 Am. St. R. 668, fully recognizes the force of the clause in question as above stated, but holds that a *fraudulent* withholding of approval defeats it, which we do not

deny. *Bannister* v. *Patty,* 35 Wis. 215, holds that a contract for cut stone work in a house providing that no payment should be made until the superintendent should give a certificate that it was to his satisfaction was valid, and required the certificate to be refused by fraud or collusion. True, it is said that if the certificate is withheld by mistake there may be recovery. The mistake meant is not defined. This is *obiter,* and it is not so actually decided. This dictum is based on *Hudson* v. *McCartney,* 33 Wis. 331. Turning to this case it is found to strongly support the view taken in this opinion. The contract for erection of a house provided for payment as the work went on to the full satisfaction of the superintendent. Held, that there could be no recovery without such certificate, unless withheld by "fraud or bad faith or clear evidence of mistake." "If fraud in the superintendent or other arbiter can *ever* be established by proof that the work was in fact properly performed, it can only be in cases where his refusal to certify is shown to have been *grossly* and palpably perverse, oppressive and unjust, so much so that the inference of bad faith would at once arise when the facts are known. Having stipulated to submit to a skilled arbiter, when the question whether his work conforms to the contract arises, the party cannot, in general, *substitute the judgment of a jury* upon that question." The court said: "Neither do we think the case was one where the jury should have been permitted to go into evidence of the manner in which the work was executed, for the purpose of impeaching the decision of the superintendent", and that such evidence could not establish fraud in the superintendent. That is, his mere error of judgment would not do. The court intimated that fraud in the superintendent could only be shown by collusion with the owner or by procurement by the owner. "It is not upon every claim made by the mechanical workman that he has complied with his contract, or upon every controversy between him and the arbiter, that the power of deciding is to be taken away from the latter, and the question carried into a court to be determined by a jury of inexperienced men, or by the judge alone. If this were otherwise, and if upon every difference between the superintendent and the party contracting to do the work, the former is deprived of all authority to decide, then such stipulations entered into between parties become utterly useless. But such is not the view

which has uniformly been taken by the courts, by which such stipulations have been held valid to secure to the party in whose favor they are made the advantage of having the work inspected and its character determined with reference to the requirements by a person of skill and ability to form a correct judgment in such matters. 'Every man is the master of a contract he may choose to make; and it is the highest importance that every contract should be construed according to the intention of the contracting parties. And it is important in a case of this description that the person for whom·the work has been done should not be called upon to pay for it until some competent person shall have certified that the work has been properly done according to the contract and specifications.' Per Erle, C. J., in *Clarke* v. *Watson, supra.* It is manifest that this important object will be defeated, and the protection of a skilled superintendent, lost, if in every case of disagreement or dissent on the part of the contractor, the opinion of a jury is to be substituted. Having deliberately and of his own free will,made choice of a person as fit and competent to decide, and by whose determination he has agreed to abide, it is but reasonable and proper that the contractor should be held to his agreement."

*Wyckoff* v. *Meyers*, 44 N.Y. 143, holds that when the certificate is given it binds the owner of the building in the absence of fraud. It is authority for the contention of this opinion. *Smith* v. *Brady,* also cited for the appellant, according to the syllabus in 72 Am. D. 442, says that when a contract requires "complete performance or the production of an architect's certificate of performance", there can be no recovery, "unless such performance is proved or such certificate produced." Of course, because by the contract either answers. But the case in the state report, 17 N. Y. 173, shows that the syllabus is not at all as given in 72 Am. D.; the contract was not as there given. It is a strong case for the position I have taken. Buildings were to be built "to the entire satisfaction of architects", and balance of payment "when all the work shall be completed and certified by the architects." The opinion says: "Assuming that the contracts had been so far performed as to justify the plaintiff in treating them as substantially executed, as I incline to think they were, yet the final payment for the work was to be made when it was completed and a certificate of the architects to that effect ob-

tained.   The parties have seen fit to make the production of such a certificate a condition precedent to the payments.   The plaintiff is as much bound by this part of his contract as any other.   It is not enough for him to bring his action and say that he has completed the work.   He has agreed that the architects should decide whether the work is completed or not.   He cannot now withdraw the decision of this question from them and refer it to a legal tribunal."   The court held that occupation of the buildings was not a waiver of strict performance,   and that "a party is entitled to retain, without compensation, the benefit of partial performance where from the nature of the contract, he must receive such benefits in advance of full performance, and is by the contract under no obligation to pay until performance is complete."   I would add that the contractor annexes his work to the reality of his own wrongful act, as judged by his chosen arbiter.   Likely the balance will not more than cover the defect.   He is in default.   *Piano Co.* v. *Ellis,* 68 Mich. 101, cited for appellant is also against him.   It holds that the clause to "satisfaction" gives absolute decision to the purchaser of the chattel.   It says that *Wood Reaping Co.* v. *Smith,* 50 Mich. 565, governs the case, and that holds that where by a contract to buy a harvesting machine it was to work to the satisfaction of the purchaser, it gave absolute right to him to reject the machine, and "his reasons for doing so cannot be investigated."   *U. S.* v.   *Robeson*, 9 Peters 319, is also against the appellant.   44 N. Y. was a case of refusal of a certificate in bad faith, that is, fraud by the architect.   26 Texas 147 has nothing on the subject.   38 Mo. App. 177, 321, has no reference to such a clause as the one involved in this case.

Thus, it appears that only fraud can excuse the plaintiff from meeting the satisfaction of Mrs. Carr and the architect.   There is no proof of fraud.   The evidence shows that the architect and Mrs. Carr's son acted *bona fide.*   The contract demanded that the heating apparatus should give 70 degrees in zero weather.   It was tested when the thermometer was 2 or 3 degrees above zero, and it furnished heat only up to 48 or 50 degrees.   Complaint was made of insufficient heat by the tenants.   The store rooms and barber shop and upper rooms were worthless without adequate heat.   The fine new house would be greatly damaged by this defect.   The company would not test the heat, though re-

quested to do so, but seem to admit this defect by their conduct. The architect and the son of the defendant swear to this defect. If it exists, as the circuit court has found, the balance claimed by the company, $327.51, would not satisfy this defect alone perhaps. There were other defects not necessary to be stated, but going to show that dissatisfaction on the part of the architect was *bona fide*. The courts say that dissatisfaction in such case is a question of fact. If it exists, reasonable or not, if honest, that is enough; its accuracy in judgment cannot be inquired into. This is because the contract makes the architect the judge, and so his decision does not come from fraud, it is good. That judge cannot be deposed and substituted by a jury of incompetent men. That the heating apparatus is defective I think pretty clearly appears. But on a mass of evidence pro and con the circuit judge has passed, and has found that the architect acted in good faith. The good faith we must treat as fixed, and that, under such a contract, is the solvent of the case.

*Affirmed.*