# CHARLESTON

## LUNSFORD AND WITHROW & CO. *v.* WREN *et al.*

Submitted June 6, 1908.    Decided December 9, 1908.

1. CHURCH OR RELIGIOUS DENOMINATION NOT A CORPORATION.

   Although a building contract purports to be signed in the name of a church or religious denomination, as a corporation, by one subscribing himself "President of the Board of Trustees;" such church or religious denomination, not being in fact a corporation, or competent as such to sue or be sued, contract or be contracted with, is not a necessary or proper party defendant in a suit by a contractor against the trustees in whom the legal title to the church property is vested, and others, to enforce his mechanics lien.   (p. 465.)

2. SAME—*Constitutional Law.*

   In such suit, on demurrer to the bill for want of parties, judicial notice will be taken of the provisions of section 47, Art. 6, of the Constitution, and of section 2293, Code 1906, inhibiting the granting of any charter of incorporation to any such church or religious denomination; and of its incompetency to become a corporation, or to sue or be sued, contract or be contracted with. (p. 465.)

3. CONTRACTS—*Trustees.*

   If labor be performed or material furnished under a contract thus executed, by authority and direction of the trustees holding the legal title to the property, the contract will be treated as the contract of such trustees.   (p. 466.)

4. TRUSTEE—*Prior Deed of Trust—Necessary Parties.*

   The trustee in a prior deed of trust, as well as the trust creditor made defendant in such suit, is a necessary party thereto, and his absence will render the bill fatally defective.   (p. 466.)

5. Mechanic's Lien—*Facts,*

The general rule in a suit to enforce a mechanics lien is that the bill should allege all the facts necessary to show the existence of a valid mechanic's lien, viz:  the existence of the contract and terms thereof; that the work was done or material furnished in pursuance of the contract; the filing of the account with the proper officer within the time required by law; together with a description of the property, against which a lien is claimed; the name of the owner of the property at the time the work was performed or material furnished; that the suit was brought within the time required by law; the existence of the debt at the time of the suit and when the suit is by sub-contractor, that the labor was performed and the material furnished to the contractor to be used in the construction of the house in pursuance of the contract with such contractor.  (p. 466.)

6. Same—*Filing in Office of Clerk.*

A bill by a contractor to enforce a mechanics lien, which fails to allege that the account was filed in the clerk's office within sixty days from the time he ceased to labor or furnish material, and such defect is not supplied by certified copy from the record of such mechanic's lien exhibited therewith, such bill is fatally defective on demurrer.  (p. 466.)

7. Same—*Special Provisions—Failure to Make Payments.*

Although a building contract contains special provisions, making periodical payments or final payment conditioned on obtaining from the architects, or their representatives, proper certificates of approval, it is unnecessary, in this state, in a suit to enforce a mechanic's lien, to allege in the bill such specific provisions, or a compliance therewith; but failure to comply with any of such provisions of the contract may be set up and proven by way of defense.  (p. 468.)

8. Same—*Pay Rolls.*

Because a building contract provides that the cost of labor and material furnished shall be paid the contractor at the end of each month, on vouchers approved by the architects before payment by the contractor, gross sums paid for labor at stated periods and charged in the account under the general designation of "pay roll," will not be treated as "lumping sums," not protected by such liens. (p. 470.)

9. Same—*Money Advanced by Another, not Protected.*

An item charged in a mechanics lien filed by a contractor, for money advanced by him to another contractor, not by virtue of his contract with the owner, but as a matter of favor or friendship to him, will not be protected by such mechanic's lien, such item not being within the provisions of the statute relating thereto.  (p. 471.)

10. CONTRACT—*Provisions Not Enforced, Will Be Considered as Waived.*

Although by a building contract contractors are to be reimbursed for all expenditures for labor and material on or before the tenth day of each month succeeding that in which they are made, on vouchers approved by the architect, or his representatives, before payment by the contractor, nevertheless if during the progress of the work numerous payments be made by the owner without objection to such vouchers for want of such approval, the condition of payment in the contract will be regarded as waived. (p. 472.)

11. INSOLVENCY OF OWNER—*Exempts Contractor from Fulfilling Contract.*

Although the rate of compensation to be finally paid such contractor is to depend on completion of the contract; yet if completion thereof is prevented by the insolvency of the owner; or his neglect or refusal to make the payments as required by the contract, the contractor will thereby be excused from completing the contract on his part, and entitled to his compensation for the part performed. (p. 473.)

Appeal from Circuit Court, Cabell County.

Action by J. K. Lunsford and others against C. E. Wren and others. Judgment for appellees and Wren and others appeal.

*Reversed and Remanded.*

W. K. COWDEN, H. C. DUNCAN and J. W. PERRY, for appellees.

SIMMS, ENSLOW, FITZPATRICK & BAKER, and NORTHCOTT & DOUGLASS, for appellants.

MILLER, JUDGE:

J. K. Lunsford, July 2, 1906, entered into a contract with "The Institutional Baptist Church, a corporation," so styled therein, whereby in consideration of four dollars per cubic yard for stone work in the wall, he agreed to furnish all necessary labor, material, etc., and to build and complete, according to the drawings and specifications of Rabenstein & Warne, Architects, the foundation walls for a church edifice, in the city of Huntington, payments to be made from time to time upon the certificates of the architects, when work to the amount of two hundred dollars had been completed and accepted by the architects. The contract also provided,

that Lunsford should prosecute the work diligently and complete the same within forty days from the time of beginning, excluding certain days in which he might be delayed, and with which he should have credit, it being stipulated in the contract that for every day's delay due to the fault of the other party, he should have credit for two days; and that should he fail on his own account to complete the work within the time specified, then he should pay to the other party at the rate of $5.00 per day for each day the completion of the work should be delayed beyond the time provided, it being stipulated that the other party to the contract should be injured to that extent by reason of its inability to occupy the building for the period of delay.

The evidence of Lunsford, not materially contradicted, shows that he began quarrying stone July 5, but because of delays in the excavation was unable to begin laying stone until some time in August; in one place he says he was delayed twelve or fifteen days, may be more, on this account; he was afterwards further delayed by the church authorities failing to furnish gravel footing for the foundation, and in this way, and by rainy weather, was delayed altogether about thirty-five days, and according to his affidavit to his lien did not complete the wall until about October 31, but according to his evidence before the commissioner not until October 1st.

In the meantime, August 24, 1906, before completion of the work by Lunsford, " The Institutional Baptist Church" by C. E. Wren, President of the Board of Trustees, entered into another contract with A. F. Withrow & Co., whereby without any reference to the Lunsford contract for building the foundation, Withrow & Co., agreed to proceed immediately, and did proceed about August 28, to erect the church building, according to plans and specifications of said architects. Their contract was to purchase the necessary materials, have them delivered on the premises and placed in position in the building, and to complete the building as soon as practicable, consistent with good workmanship; the Church to reimburse them for their outlay for labor and material on or before the tenth day of each month, succeeding that in which they should be made, on vouchers approved by the

architects before they were paid, and Withrow & Co., were to be paid eight per cent on the aggregate sum expended by them for such labor and materials when the contract should be fully completed. In addition to this, the Church agreed to pay the freight and charges on all tools, derricks and other equipments, but no salary was to be allowed any member of the firm, the Church, however, was to pay the expenses of a foreman, engineer, and for fuel and water. Other provisions of the contract are immaterial in the present controversy.

After the contract with Withrow & Co., the further work of building the foundation seems to have been proceeded with by Lunsford under the supervision of J. S. Higgs, Superintendent for Withrow & Co., and although Lunsford and Withrow & Co., deny that the latter assumed the contract of Lunsford, yet Lunsford seems to have looked to and received payment from Withrow & Co., for all work and materials furnished. Wren, the pastor of the church and president of the Board of Trustees, claims that Withrow & Co., at the time of the contract, assumed the contract of Lunsford; and it is shown that, of the $919.60 acknowledged as received by Lunsford on account of the aggregate of his claim of $1423.60, the sum of $499.10 was paid him by Withrow & Co. The latter claim the payments by them to Lunsford were merely accommodations to the Church and to help along the work.

At all events, the work proceeded under Lunsford's contract until October 31, when he claims to have completed it; and under the Withrow & Co. contract until about November 13, when they claim they ceased work, and at which time they had expended for labor and material, including $138.75 advanced for gravel furnished, $499.10 paid Lunsford, and $235.28, 8 per cent commissions, claimed by them on disbursements, the sum of $3176.30, and there has been paid them in sums at from $5.00 to $200.00, only $658.18.

The reason assigned by Withrow & Co. for not proceeding further with their contract, was the failure of the church to make payments as provided in the contract.

About November 27, 1906, Lunsford made up and filed in the county clerk's office, his mechanic's lien, claiming a

balance of $516.00 against the church building and lots; and Withrow & Co., January 14, 1907, made up and filed their lien against the same property for the balance of their claim, amounting to $2,583.95.

Lunsford, March 6, 1907, and Withrow & Co., May 27, 1907, instituted in the circuit court of Cabell county, the present suits to enforce payment of their respective liens. C. E. Wren, W. H. Ball, W. A, Ripley, J. W. Perry and Emma Mills, Trustees of Institutional Baptist Church, and The Huntington Land Company, a corporation, were the only parties made defendants to these suits, except that Lunsford, the plaintiff in the first suit, was made defendant in the suit of Withrow & Co.

April 1, 1907, Wren and the other trustees filed their general demurrer to the bill of Lunsford; and July 1, following, they and Lunsford filed their demurrer to the bill of Withrow & Co., and on the same day, both causes being brought on to be heard together, the demurrer in each case was overruled and leave given the defendants to answer. But without awaiting the answers, both causes were on the same day referred to a commissioner, who was by the order of reference, directed to report as follows: First, whether or not the plaintiff in either of said suits is entitled to maintain a · lien against said church property; second, the amounts of said liens; third, what other liens, if any, exist against said property, and the priorities thereof; and fourth, any other matter required by either of the parties in writing, or deemed pertinent by the commissioner.

Pending proceedings before said commissioner, August 10, 1907, Wren and others, trustees, filed with the commissioner answers to each of said bills; and the Huntington Land Company also lodged in the papers an answer to the bill of Lunsford; but these answers were never filed in court until the final decree appealed from, pronounced December 13, 1907, and there were never any replications thereto.

The final decree adjudged the plaintiffs entitled to enforce their respective liens as reported by the commissioner, and overruling the several exceptions of defendants thereto, further adjudged there was due Lunsford on his lien $261.29, to Withrow & Co. on their lien $2655.09, and that there was

due the Huntington Land Company on its deed of trust debt, for balance of purchase money, $754.11, the latter being first in priority, and the two former second and equal in priority, and that the church property be sold by a commissioner to satisfy the same.

From this decree Wren and his co-trustees have appealed. The errors relied on are covered by their demurrers to the bills of complaint, and their several exceptions to the commissioner's report.

The grounds of demurrer common to both bills are: First, want of parties; second, want of proper averments to show plaintiffs entitled to any relief. First, want of parties. It is insisted that "Institutional Baptist Church, a corporation," the party nominally contracted with, and the trustee in the deed of trust to the Huntington Land Company, are necessary and proper parties defendant. It is true the contracts exhibited with the bills purport to be with such a corporation; but in legal effect the contracts were with defendants Wren and others, trustees, to whom were conveyed the lots on which the church was to be erected. Withrow & Co. allege in their bill what Lunsford's bill does not allege, namely; the date, consideration and place of record of said deed, but exhibit no copy thereof. On demurrer, however, enough appears to show ownership in the trustees, and that the contract was made with them. It is argued, however, that it appears also that the beneficial ownership is in the alleged corporation, and legal title only in the trustees, making it necessary to aver and prove that the contract was made with the corporation, the trustees, if authorized, being merely the agents.

If there exists in law or fact such a corporation undoubtedly the position of demurrants would be correct. But we take judicial notice of the provisions of section 47, Art. VI of the Constitution, and section 2293, Code 1906, inhibiting the granting of any charter of incorporation to any church or religious denomination. An attempt to create such a corporation would be void, and confer upon it, as such, no powers of contract or other corporate powers. *Powell* v. *Dawson*, 45 W. Va. 780. According to said article of the constitution provisions may be made by general laws for securing the title to church property and for the sale and

transfer of it, so that it shall be held, used or transferred, for the purposes of such church or religious denomination. It is true that section 2606, Code 1906, provides that the conveyance of land for the use or benefit of any church, religious sect, society congregation or denomination shall be construed to give the local society or congregation of such church, to whom it was so conveyed, etc., control thereof; but section 2615, Code 1906, gives the board of trustees of any such church, authority to borrow money and create liens upon the property, if required, for building or legitimate purposes, in the execution of such trust. Such church or religious society has no legal entity so as to sue or be sued, contract or be contracted with, as such. It could be represented only by the trustees holding the legal title, and having power under the statute to contract and be contracted with. The contracts involved here were each signed by C. E. Wren, President of the Board of Trustees, and if given any legal effect they must be regarded as contracts with the trustees holding legal title, the legal owners of the property. Therefore, the demurrer, so far as it relates to the absence of the corporation, was properly overruled.

But respecting the absence of the trustee in the deed of trust, the case is different. It is true the deed of trust was not exhibited with or made a part of the bill, but the bill alleges and the answer of the Huntington Land Company, holder of the trust, admits the existence thereof, and we may assume that the legal title to the property is vested in trustee named therein. The decree appealed from ascertains and decrees in favor of the Land Company, the amount of the trust debt, and a sale of the property to satisfy the same. The trustee in a deed of trust, holding the legal title, is a necessary defendant to such suit and his absence renders the bill fatally defective. *Farmer's Bank* v. *Watson*, 39 W.Va. 342; and cases cited in 13 Ency. Dig. 373. We conclude, therefore, that the bills are both fatally defective for failure to make the trustee, a defendant, and that the demurrers thereto should have been sustained for this reason.

Are the bills wanting in any other necessary averments? Our statute makes no provisions as to what shall be alleged in a bill to enforce a mechanic's lien, except that section 3119, Code 1906, provides that any person having such a lien

may enforce the same by filing a bill in chancery in the circuit court, and that he shall make all other persons having like liens on the property parties thereto; and the general rule in such cases is, that the bill should allege all the facts necessary to show the existence of a valid mechanic's lien, the existence of the contract and the terms thereof; if a copy of the contract be exhibited with the bill, any errors in stating the terms thereof may be treated as a surplusage. Boisot on Mech. Liens, section 541; Hogg's Eq. Prin. section 520; 1 Hogg's Eq. Proc., section 124; 2 Hogg's Eq. Proc. section 965; *Richardson* v. *Ebert*, 61 W. Va. 523; *Grant* v. *Cumberland Valley Cement Co.*, 58 W. Va., 162. In 2 Hogg's Eq. Proc. section 965, a form of bill taken from *Turnbull* v. *Clifton Coal Co.*, 19 W. Va. 299, is given. This form seems to contain all the allegations of facts required in a bill by a principal contractor, to show the existence of a valid mechanic's lien. It would not be sufficient in all respects under the present statute, as a form of bill for a sub-contractor; it lacks the necessary averments of notice to the owner, required by section 3112, Code 1906. In 1 Hogg's Eq. Proc. section 124, and Eq. Prin. section 520, *supra*, he says the bill "must show on its face that the claimant has taken the steps necessary to the creation of such a lien, that the work was done or material furnished in pursuance of a contract with the owner of the property or his authorized agent, * * * * the filing of the account with the proper officer within the time required by law after the claimant had ceased to work or furnish material, together with a description of the property against which the lien is claimed; and there should be an averment of the name of the owner of the property, * * * at the time the work was performed or the material furnished, and it should appear that the suit was brought within the time required by law, * * * * the existence of the debt at the time suit is brought." In *Central City Brick Co.* v. *Norfolk & W. R. Co.*, 44 W. Va. 286, it is held "not sufficient to file with such a bill the account filed with the clerk of the county court for the purpose of creating such lien, but ⸢the fact ⸢that the material was furnished to the contractor, to be used in the construction of the house, in pursuance of a contract with such contractor, must be alleged and proved before such lien will be

enforced against the property." A mechanics lien begins when the work has been commenced and material furnished under such a contract. *Cushwa* v. *Improvement etc., Asso.*, 45 W. Va. 490. But the owner does not become liable for any material furnished that has not gone into the construction of the building.

Measured by these rules of pleading, we think the bills in each case do allege substantially the ownership of the property at the time the work was performed and material furnished; that the work was done and material furnished pursuant to the contract, and, contain a sufficient description of the property; that there were debts due to the plaintiffs at the time suits were brought, and the amounts thereof; and that the suits were commenced within six months from the time of the filing of the accounts, the limitation provided by the statute; and we think the Withrow & Co. bill sufficiently alleges the filing of their account with the clerk of the county court within sixty days from the time they ceased to perform labor and furnish materials; this allegation being substantially in the language of the statute. And this averment is further aided by a certified copy of the account exhibited with the bill.

While the bill of Lunsford alleges the filing of his lien, containing a description of the property, sworn to November 27, 1906, etc., and that it was duly admitted to record, December 15, 1906, and exhibits therewith what purports to be a copy of said account, there are no indorsements of the clerk thereon showing when the account was actually filed or admitted to record, and there is no averment, and the purported copy does not show that the account was so filed in the clerk's office within sixty days after the plaintiff ceased to labor and furnish material, as the law requires. This essential fact we think should have been distinctly alleged; it is essential to the creation of the lien. If the fact appeared from the exhibit filed, we could look to it to supply the defect, and treat the erroneous allegation of the bill as surplusage. *Cen. City B. Co.* v. *N. & W. R. Co.*, 44 W. Va. 286; *Richardson* v. *Ebert, supra.* But in this case the allegation is not made and the exhibit does not supply the defect.

We are of opinion, therefore, that while Withrow & Co's.

bill contains sufficient allegations, the Lunsford bill is defective in failing to allege that the account was filed in the clerk's office within sixty days from the time he ceased to labor and furnish materials, and that the demurrer should have been sustained on this ground.

Both bills unnecessarily allege filing with the owner or his agent itemized accounts of the labor done and material furnished within thirty-five days from the time the plaintiff ceased to labor and furnish material. This is not required of the principal contractor, but of a sub-contractor.

It is claimed also that the Lunsford bill is defective for failure to allege that proper certificates of the architects had been obtained that the work had been fully done and accepted by them; and that the Withrow & Co. bill is bad, for failure to allege that the payments or disbursements covered by their lien were made upon vouchers approved by the architects or their representative, before payment by Withrow & Co.; and that both bills, furthermore, are bad for failure to allege that the contracts have been complied with and the work fully completed. It is undoubtedly true that provisions in contracts of this kind, making final payments to depend on certificates of approval of architects or third persons, are binding, and are conditions precedent to the right of recovery. *Plumbing Co.* v. *Carr*, 54 W. Va. 272, and authorities cited. Demurrants say the bill to enforce a mechanic's lien must specifically allege such specific terms and aver performance thereof; the plaintiffs that this is a matter of defense. Demurrants rely on *McConnell & Drummond* v. *Hewes*, 50 W. Va. 33; *Plumbing Co.* v. *Carr*, *supra.* and *Cen. City B. Co.* v. *N. & W. R. Co.* *supra.*

In the latter case the question of pleading presented here did not arise and was not decided. In the former the plaintiff undertook to plead the contract, with its special provisions and the performance thereof by him, relying also on section 3115 Code, 1906, which provides that "When the owner fails to perform his part of the contract, and by reason thereof the other party, without his own default, is prevented from completely performing his part, he shall be entitled to a reasonable compensation for as much as he

has performed, in proportion to the price stipulated for the whole." The court simply held the plaintiff had not proven his case as made.

It is undoubtedly true, as this case seems to imply, and as many cases cited and referred to in the opinion in the former case hold, that in suits in equity, certainly in actions at law upon the contract, the pleader must aver the contract and compliance with any special provision thereof, performance whereof on his part is a condition of recovery; but the present suit is one specially authorized by statute to enforce a mechanic's lien and is not controlled entirely by the general rules of pleading applicable in suits upon contracts. It was therefore held that in suits based on this statute the plaintiffs must allege and prove either that the architects made proper estimates and gave proper certificates, or that they in bad faith collusively refused to do so, etc. 7 Am. & Eng. Enc. Law, (2nd Ed.) 153, and 4 Enc. Pl. & Pr. 643, 644, are cited by the Court for this proposition. Reference to these authorities, however, will show that the rule enunciated is applicable to specific actions upon the contract, or where some local statute requires that the provisions of the contract be fully set out in the declaration or bill. *Martinsburg & Potomac R. R. Co.* v. *March*, 114 U. S. 549, and other Supreme Court cases relied upon here, and cited in *Plum Co.* v. *Carr*, were actions of this character.

Our statute does not require such specific allegations in suits to enforce mechanic's liens; nor do the rules of practice laid down by Mr. Boisot, or Mr. Hogg require it; nor does the form of bill given by the latter, include specific averments of the provisions of the contract. According to these authorities, unless controlled by statute, such facts only need be alleged as by statute are required to create a valid mechanic's lien. In *Arnold* v. *Farmers' Exch.* (Ga.) 51 S. E. 754, the direct point here presented upon demurrer was passed upon. One point on demurrer was that the plaintiffs' petition did not affirmatively allege a completion of the contract by the contractor. The court said: "The statute does not require this;" that "in the prosecution of his statutory remedy, it is not incumbent on the material man to allege anything more than the statute declares shall constitute a *prima facie* right to assert and enforce his

claim of lien;" that the owner of the premises may, perhaps "urge as a defense, not only that the lien has been waived in writing, or that the contractor was settled with, etc." The court in that case further says: "We are content to rest our decision in this case upon the principle that, in the prosecution of a statutory remedy, all the plaintiff need allege is enough to show that he has complied with all of its essential requirements and has at least a *prima facie* right to avail himself of that remedy." Our conclusion, therefore, is that these bills are not defective for want of necessary averments. A different rule seems to obtain in Illinois, and possibly in some other states. *Michaels* v. *Wolfe*, 136 Ill. 68, 71. A different question, however, may be presented when we come to the merits of the case. In Boisot on Mech. Liens, section 570, chapter 592, the author says: "An answer in proceedings to enforce a mechanic's lien may set up a special contract, and assign breaches thereof, and claim damages therefor, if he proposes to adjust all the equities between the parties by allowing the plaintiff the value of his work and materials, both performed and furnished, under a special contract not completed."

It is further claimed by demurrants that although Withrow & Co.'s bill alleges the filing of the lien within sixty days from the time they ceased to labor, the copy of the lien exhibited therewith shows that the last item of material and labor furnished was November 13, 1906, more than sixty days before the filing of the account. But there are other items in the account, besides the one of "November 17, 1906, amount advanced Lunsford and Bond, $13. 85." We cannot say as a matter of law, upon demurrer, that these are not covered by the provisions of the contract to furnish labor and material. The question may be presented on the merits, but it is not reached by demurrer.

The point is also made that several items of "pay roll," and "the amount advanced J. K. Lunsford for Institutional Bapt. Church on foundation," charged in the account of Withrow & Co., are "lumping sums," rendering the lien invalid to that extent, according to the ruling of this Court in *Niswander & Co.* v. *Black*, 50 W. Va. 188. This question reaches only some of the items in the account, and

does not properly arise on demurrer. But if it did we would hold that these items do not fall within the rule of *Niswander & Co.* v. *Black* respecting "lumping sums," but under the rule announced in *Grant* v. *Cumberland Valley Cement Co.*, 58 W. Va. 162; and *O'Neal* v. *Taylor*, 59 W. Va. 370.

Although the demurrers to the bills will have to be sustained for want of parties, we think it proper, that we should at this time dispose of some of the other questions presented. The answers contain general denials of the contracts as alleged; deny the indebtedness, and that there is anything due plaintiffs thereon, or that the contracts as made were performed by the plaintiffs, and we think sufficiently negative the material fact alleged in the bills. It is claimed the plaintiffs evidence is not sufficient to establish the liens. In the Lunsford case no certified copy of his liens was exhibited with the bill, or offered in evidence on the trial, and we do not think the evidence sufficient to establish the fact that the lien was filed in time.

Another point made, on exception to the commissioner's report is, that the evidence shows certain items, aggregating $238.62, paid by Wren to Lunsford, for which specific credits are not given in the Lunsford account. The commissioner has charged Lunsford with $919.60, which probably includes these items, and, in stating the account, starts with the total credits given by Lunsford in his account, and by making certain reductions reaches the sum decreed him.

It is further claimed that the $499.10 charged by Withrow & Co. in their account as paid Lunsford, is neither credited by Lunsford in his account nor charged against him by the commissioner. This sum, we think, is covered by the item $919.60 credited in Lunsford's account; it was so assumed by the commissioner in his report, and we cannot see from the evidence that this was error.

One point made on exceptions to the commissioner's report was that as Lunsford's work had not been fully and satisfactorily completed, and accepted by the architects, he was not entitled to final payment. While the evidence shows payments to Lunsford from time to time, the supervising architect testifies that the wall was left in an incomplete state, was not accepted by him, and that it would cost two

hundred dollars to put it in proper condition. Lunsford practically admits that some of the stone furnished may not have been in strict compliance with his contract, but that he proposed to take them back if not wanted.    It does not clearly appear whether or not the price of these stones was included in Lunsford's account; but Lunsford practically admits that the walls may not have been level all the way around, but he excuses himself on the ground that Higgs, who represented Withrow & Co., said the work was all right.    But Higgs was not the architect or a representative of the architect, and was unauthorized, so far as the record shows, to accept the walls.    While the contract is properly drawn to express the intent of the parties, yet we think that a fair construction of it is that the work was to be done satisfactorily to the architect, and the plaintiff not entitled to recovery without showing the architect's approval. *Lumber Co.* v. *Friedman*, 61 S. E. 815.    It is not pretended that this provision of the contract, upon which final payment depended, was waived by the owner; and without such waiver or compliance with the conditions of the contract no recovery can be had.

With respect to Withrow & Co.'s lien, one item in the account allowed by the commissioner, and excepted to is "$499.10, advanced Lunsford." Withrow & Co. claimed before the commissioner that this item was paid Lunsford, not by virtue of their contract, but by way of advancement to Wren and his co-trustees, and as a matter of favor and friendship, and that they had not assumed, as defendants claimed, performance of the Lunsford contract.    This being the fact, the statute gives them no lien therefor.    Such advancement, perhaps, would give them an action at law, against Wren and others, for money advanced, but not a mechanics lien. Boisot on Mech. Liens, section 114; *Kirby* v. *Daly*, 45 N. Y. 84.    Exception to this item in the commissioner's report therefore should have been sustained.

Another question presented, upon exceptions to the commissioner's report, respecting the Withrow & Co. account was that the payments for labor and material made by them were not on vouchers approved by the architects before payment, without which Withrow & Co. were not in position to demand the monthly payment provided by contract. The evidence shows that during the progress of the work,

numerous payments were made with Withrow & Co. by defendants, without objection to the vouchers for want of approval by the architect.   According to the weight of authority, the conditions of the contract will in this account be regarded as waived.   *Vermont Street Church* v. *Brose*, 104 Ill. 206.   *Ashland Lime etc.* v.   *Shores*, 105 Wis. 122; *Bannister* v.   *Patty's Executors*, 35 Wis. 215; *Healy* v. *Fallon*, 69 Conn., 228; *Cosby* v. *Adams*, 1 Wils. (Ind.) 342; *Hartley* v. *Murtha*, 5 N. Y. Appel. Div. 408; *Id.* 39 N. Y. Supp. 212; and *Childress* v. *Smith*, (Tex. Civ. App.) 37 S. W. 1076.

Another exception to Withrow & Co.'s account was, that they had not completed their contract and not entitled to final payment, and particularly to the payment of the 8 per cent commission, as compensation for their services.   .There is, however, no denial of the fact that defendants failed on their part to make payments as provided in the contract, and were without financial ability to do so.   They had entered upon the work of building a church, involving a cost of $100,000.00, according to the evidence, without adequate means to accomplish it.   Plaintiffs were not obliged to proceed under the circumstances.   As was said by the Court of Civil Appeals of Texas, in *Childress* v. *Smith, supra*, where .a "provision in a building contract that payments shall be made every two weeks on the architect's certificates for the amount of work done, less 15 per cent., which is to be held until final completion of the contract, relates only to advances to be made while the work is progressing; and, if the contractor is prevented from completing the work by the other party's insolvency, his failure to produce certificates will not affect his right to recover for breach of contract."

We are therefore of opinion to reverse the decree below, sustain the demurrers to each of the bills, remand the causes to the circuit court with leave to plaintiffs to amend their bills if so advised, and to be therein further proceeded with as herein directed, and further according to the principles governing courts of equity.

*Reversed and Remanded.*