CALDWELL & DRAKE v. SCHMULBACH.

(Circuit Court, N. D. West Virginia. December 23, 1909.)

1. MECHANICS' LIENS (§ 285*)—ACTIONS—REFERENCE.

Where, in a suit to enforce a mechanic's lien, the issues required a statement of an account between the parties involving more than 200 items, on the one hand ranging from 20 cents to over $6,000 for extras, and, on the other, for similar items of omitted and defective work and the record contained over 3,200 typewritten pages, containing books of account, plans, specifications, drawings, correspondence, contracts, stipulations, and agreements, a reference to a master was indispensable.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 576; Dec. Dig. § 285.*]

2. DAMAGES (§ 78*) — BUILDING CONTRACT — DELAY — LIQUIDATED DAMAGES—PENALTY.

Where delays in the execution of a building contract providing for the contractor's payment of a specified sum for each day's delay are wholly occasioned by the contractor's default, the contract provision is enforceable under the West Virginia law as liquidated damages.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 161; Dec. Dig. § 78.*]

3. DAMAGES (§ 85*)—BUILDING CONTRACT—DELAY—LIQUIDATED DAMAGES—PENALTY.

Where a building contract provided for payment by the contractor of a specified sum for each day's delay in completing the building after a date

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

specified and delay was due to the default of both the contractor and the owner, or his agents, or independent contractors, the court will not undertake to apportion the damages caused by such delays, but the owner's claim for delay will be wholly disallowed.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 179–181; Dec. Dig. § 85.*]

**4.** CONTRACTS (§ 295*)—BUILDING CONTRACTS—SUBSTANTIAL PERFORMANCE.

Where the contract price for a building was $231,698, and the whole claim by the owner for omitted and defective work amounted only to $6,329.06, of which all but $406.80 was disputed by the contractors, who claimed in addition $29,150 for extras, for which the owner admitted liability to the amount of $6,155.40, there was a substantial performance of the contract precluding the owner from resisting payment of a balance of over $20,000 of the contract price under a provision requiring the work to be completed to the satisfaction of the architects and the owner before final payment.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1353, 1356; Dec. Dig. § 295.*]

**5.** CONTRACTS (§ 232*)—BUILDING CONTRACTS—EXTRAS—SPECIFICATION—CONTRACT—CONSTRUCTION.

Specifications for a building prepared prior to the execution of the contract provided that no allowance would be made for extra work unless previously authorized by order signed by both the owner and architect. The contract, however, when executed, provided that extras should be allowed only on the written order of the architect "or" owner. *Held*, that the contract represented the final meaning of the minds of the parties, so that the contractors were entitled to recover for extras ordered by either the architect or the owner.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1071–1097; Dec. Dig. § 232.*]

**6.** CONTRACTS (§ 232*)—BUILDING CONTRACTS—ORDERING EXTRAS—ORAL DIRECTIONS.

A provision of a building contract that extra work should be allowed for only on the written order of the architect or owner did not prevent the parties from subsequently waiving such provision, so as to entitle the contractors to charge for extras ordered either by the owner or architect by parol and on their being ratified by the acceptance of the building.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1089, 1090; Dec. Dig. § 232.*]

**7.** CONTRACTS (§ 232*)—BUILDING CONTRACTS—EXTRAS—BURDEN OF PROOF.

Where a building contract provided for payment for extras only when furnished on the written order of the architect or owner, the contractor, in order to recover for extras furnished, was bound to show that they were in fact extras; that the prices charged were reasonable; that they were furnished in compliance with the contract or under a waiver of its terms.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1090; Dec. Dig. § 232.*]

**8.** MECHANICS' LIENS (§ 249*) — EXTRAS — AGREEMENT TO ARBITRATE—CONDITION PRECEDENT—PERFORMANCE.

Where extras were contemplated by a building contract, and were performed with labor or material furnished either under the contract or pursuant to a new and additional contract in connection with the erection of the building, and the contractors had a clear right to file a lien within a specified time for the balance of the contract price and for the extras, performance of a provision of the contract for arbitration as to the value of extra work was not a condition precedent to the contractors' right to enforce their lien therefor, since equity, having jurisdiction for the purpose

of foreclosing the lien for the balance of the contract price, would settle the whole matter.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 433; Dec. Dig. § 249.*]

**9. CONTRACTS (§ 289*)—BUILDING CONTRACT—EXTRAS—ARBITRATION.**

Where extras were furnished under a building contract providing that, in case valuation by the architect should not be agreed to, the matter should be submitted to arbitration, neither the report of the arbitrator nor the offer to arbitrate was essential to the right to recover therefor where the architect's certificate was refused, not because of any disagreement as to valuation, but by order of the owner.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1310, 1311; Dec. Dig. § 289.*]

**10. MECHANICS' LIENS (§ 43*)—EXTRA WORK.**

Where specifications described a building larger than the lot to be improved, which was surrounded by other buildings, and, soon after excavation for the foundation was commenced, it was shown that extraordinary and expensive measures would be required to protect adjacent buildings from damage and destruction, the architects having directed that such measures be taken by the contractors, the fact that some of the necessary work in strengthening and securing the walls of an adjacent building was done outside the limits of the lot improved did not deprive the contractors of their right to a mechanic's lien therefor against such lot and its improvement under the West Virginia rule that the mechanic's lien law shall not receive a strict, but a fair and liberal, construction as to the creation of the lien and its enforcement.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 45; Dec. Dig. § 43.*]

In Equity. Bill by Caldwell & Drake against Henry Schmulbach to enforce a mechanic's lien. Interlocutory decree for complainants.

This bill is filed to enforce a mechanic's lien. On February 9, 1905, the plaintiffs contracted to perform certain specified work toward the erection of a 12-story office building in Wheeling with the defendant for $231,698, payable upon estimates made every 30 days, with 10 per cent. reserved until 20 days "after contract is completed and satisfactory to architects and owner," when final payment was to be made. Further provisions of the contract relating to matters in controversy here were: That the work was to be done "under direction and to the satisfaction of M. F. Gierey and F. F. Faris, architects, acting for the purpose of the contract as agents of the owner." That "no alterations shall be made in the work shown or described by the drawings and specifications, except upon a written order of the architects or owner and when so made the value of the work added or omitted shall be computed by the architects, and the amount so ascertained shall be added to or deducted from the contract price. In the case of dissent from such award by either party hereto, the valuation of the work added or omitted shall be referred to three disinterested arbitrators, * * * the decision of any two of whom shall be final and binding." That "the contractor shall provide sufficient, safe, and proper facilities at all times for the inspection of the work by the architects or their authorized representatives. He shall, within twenty-four hours after receiving written notice from the architects to that effect, proceed to remove from the grounds or buildings all materials condemned by them, whether worked or unworked, and to take down all portions of the work which the architects shall by like written notice condemn as unsound or improper, or as in any way failing to conform to the drawings and specifications. Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or materials of the proper quality, or fail in any such respect to prosecute the work with promptness and diligence or fail in the performance of any of the agreements herein contained, such refusal, neglect, or failure being certified by the architects, the owner shall be at liberty,

---

For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

after three days' written notice to the contractor, to provide any such labor or materials, and to deduct the cost thereof from any money due or thereafter to become due to the contractor under this contract; and, if the architects shall certify that such refusal, neglect, or failure is sufficient ground for such action, the owner shall also be at liberty to terminate the employment of the contractor for the said work, and to enter upon the premises and take possession, for the purpose of completing the work comprehended under this contract, of all materials, tools, and appliances thereon and to employ any other person or persons to finish the work, and to provide the materials therefor, and, in case of such discontinuance of the employment of the contractor, he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractor, but, if such expense shall exceed such unpaid balance, the contractor shall pay the difference to the owner. The expense incurred by the owner as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the architects, whose certificate thereof shall be conclusive upon the parties." That "the owner agrees to provide all labor and materials not included in this contract and in such manner as not to delay the material progress of the work. The contractor agrees and binds himself to have all the work contemplated by these articles finished and ready to turn over to the owner by December 31, 1905, and, in case of a failure in this particular, agrees to pay the owner the sum of fifty dollars ($50.00) per day as measured damages for each and every day beyond the said 31st day of December, 1905, that the said failure exists, provided, however, that said contractor shall have credit for such days as the architects and owner shall certify at the time as days when the weather forbids work; and credit for each and every day he is delayed by the owner or other contractors employed by the owner, if such delay is also certified to by the architects and owner at the time it occurs."

"It is further mutually agreed between the parties hereto that no certificate given or payment made under this contract except the final certificate or final payment shall be conclusive evidence of the performance of this contract, either wholly or in part, and that no payment shall be construed to be an acceptance of defective work or improper materials. The contractor shall be responsible for the labor and material furnished by him under this contract until same shall have been finally accepted by the owner, and replace same at his own expense in case it is damaged or destroyed, unless same be by fault of owner."

On August 17, 1907, plaintiffs filed their notice, account, and declaration of mechanic's lien in which they claim a balance due on the contract of $24,009.58 and for a large number of specified extras, $26,122.97, less $406.80 for work omitted netting $49,725.75, and to enforce this lien this bill was filed at September rules following. The defendant has filed answer, not denying the contract nor assailing the regularity of the proceedings taken to secure and enforce the mechanic's lien, but denying the accuracy and verity of the account and demands upon which it is based. By this answer it is claimed that the true amount due upon the contract is $21,309.58; that the utmost amount the plaintiffs can justly claim for extras is $6,155.40, as against which sums defendant is entitled to set off $6,329.06 for omitted and defective work and $29,150 liquidated damages at the rate of $50 per day as fixed by the contract, for 583 days' delay in finishing the work, thereby extinguishing plaintiffs' just demands and leaving them, in fact, indebted to plaintiffs in the sum of $8,014.08.

To this answer replication has been made and proofs taken and the cause submitted.

James W. Ewing, John A. Howard, and John J. Coniff, for plaintiffs.
Samuel M. Noyes, Caldwell & Caldwell, and Nelson C. Hubbard, for defendant.

DAYTON, District Judge (after stating the facts as above). Records like this, weighing over 100 pounds, consisting of over 3,200 typewritten pages of evidence (which counsel with commendable industry have sought to abstract within a limit of 800 pages), books of accounts, plans, specifications, drawings, correspondence, contracts, stipulations, and agreements, all of which must receive careful study and consideration, may possibly throw some light upon the vexed question of the law's delays and failure of the courts to expedite business. It seems clear to me, after having read this record, that a reference to a master will be absolutely necessary, no matter how much the delay is to be regretted, unless I take the time to state an account between these parties involving more than 200 items, on the one hand, ranging from 20 cents to over $6,000 for extras, and, on the other hand, for similar items of omitted and defective work. It does seem to me, however, that I should, in order to expedite this work before a master, indicate that sufficient evidence in my judgment has already been taken to fully enable him to state such account, and that, unless special reasons be shown to the contrary, he should be limited to the record as it now stands. Further, it seems to me that I may very well pass upon matters of principal dispute herein involving legal propositions, leaving him thus unembarrassed, to make the necessary calculations as to such items.

It becomes necessary, therefore, to consider first the claim of defendant for $29,150 damages for delay in the completion of the contract. It is claimed by defendant that this contract was a West Virginia one, and that the Supreme Court of Appeals of West Virginia in the recent case of the Charleston Lumber Co. v. Friedman, 64 W. Va. 151, 61 S. E. 815, has determined that a provision similar to the one here fixing a specific sum to be paid per day for delay in the execution of the contract is enforceable, not as a penalty, but as liquidated damages. And the cases of Wheeling Mold & Foundry Company v. Wheeling Steel & Iron Co., 58 W. Va. 62, 51 S. E. 129, and Sun Printing & Publishing Association v. Moore, 183 U. S. 642, 22 Sup. Ct. 240, 46 L. Ed. 366, are cited in support of this contention. There can be no question of the soundness of this position where delays in execution of such a contract are wholly occasioned by the default of the contractor, but this I perceive to be the full extent to which these decisions go. In the Lumber Co. v. Friedman Case the contractor undertook to erect complete a store building by a fixed date, and to pay $10 per day for each day thereafter that the building remained incomplete and unfinished. The enforcement of this clause was resisted on the ground that it was a penalty, and equity would not enforce it. Reversing the court below so holding, the Supreme Court of Appeals held such sum per diem for delay not to be a penalty, but to be liquidated damages for which the owner could recover. In the Foundry Company Case the contractor agreed to manufacture and deliver by a fixed date certain machinery, and, in default, $50 was to be deducted for each day's delay. The Supreme Court of Appeals, reversing the lower court, held this provision to provide not a penalty, but a liquidated sum for damages, and that the contractor could not

excuse the delay "by showing merely that it (plaintiff) proceeded in good faith and with due diligence, with the use of all means in its power and at its command, to perform the contract." And this for the very cogent reason that "under such contract the plaintiff was required to furnish sufficient means and ability to perform the contract on its part, according to its terms." In the case of the Sun P. & P. Association v. Moore a yacht was chartered for a specified period upon conditions that it should be returned within the time fixed or the sum of $75,000 should be paid. It was wrecked within the time and not returned, and the hirer was held responsible for the fixed value of it.

The principles here established have no application to cases where, under such contracts for liquidated damages for delays, such delays have arisen from (a) the fault of the owner; or (b) that of his agents and independent contractors; or (c) by the joint and mutual default of owner and contractor. Such cases must be governed, I conceive, by the rulings in such cases as Jefferson Hotel Co. v. Brumbaugh (C. C. A., 4th Ct.) 168 Fed. 867; Vilter Mfg. Co. v. Tygart's Valley Brewing Co. (C. C.) 168 Fed. 1002; Stewart v. Keteltas, 36 N. Y. 388; Heckmann v. Pinkney, 81 N. Y. 211; Weeks v. Little, 89 N. Y. 566; Lilly v. Person, 168 Pa. 219, 32 Atl. 23; Focht v. Rosenbaum, 176 Pa. 14, 34 Atl. 1001; Wilkens v. Wilkerson (Tex. Civ. App.) 41 S. W. 178. In the Jefferson Hotel Case, supra, the Circuit Court of Appeals for this circuit fully considered this very question, and determined that the courts would not undertake to "apportion" the damages occasioned by mutual delays and I think very clearly set forth some of the pertinent reasons why it would not do so. In this case there can be no question that the delays were the result of mutual default. It is not denied that the ground upon which this building was to be and was erected was hemmed in by other buildings; that in the very start wholly unexpected and extraordinary measures, not contemplated by the contract, had to be taken to protect these adjoining buildings from damage and destruction; that the architects by some strange error by their plans and specifications provided for a larger building than the lot of ground would contain; that a number of additional contracts were let to contractors wholly independent of plaintiffs, who delayed the work; that a very great number of changes were made, so many, in fact, that the original specifications could hardly describe the final result. Under such circumstances, I am clearly of the opinion that this case, like the Jefferson Hotel one, presents a very striking example of how impossible it would be for a court to attempt to determine and apportion the cause of delay between the owner and contractor, both of whom are in default. But it is insisted that the contract itself here provides in express terms for such apportionment of delay, and in this particular differs from the terms of the one in the Jefferson Hotel Case. It seems to me that this cannot change the situation. The law is that courts by reason of the very uncertainty, the impossibility to fairly and justly determine the causes of such mutual delays and their effects will not attempt to apportion. This being true, no private contract by its terms can change the law or compel them so to do. For these reasons the defendant's claim for $29,150 damages for delays must be wholly disallowed.

But it is insisted by defendant that the contract required the work to be completed and to be satisfactory to architects and owner before final payment could be required, that such work was not so completed, and therefore plaintiffs' bill must be dismissed as prematurely brought, and the three cases of Barrett v. Coal & Coke Co., 51 W. Va. 416, 41 S. E. 220, 90 Am. St. Rep. 802, Plumber Co. v. Carr, 54 W. Va. 272, 46 S. E. 458, and Lunsford v. Wren, 64 W. Va. 458, 63 S. E. 308, are cited in support of this proposition. In the first case the matter in controversy was 500,000 brick to be manufactured in a certain manner, "and to the satisfaction of the general superintendent of defendant company or his authorized representative." The right of the superintendent to reject the brick, in absence of fraud, was held to be absolute, but recovery for the actual work done upon quantum meruit was upheld; the failure to complete the work being without the fault of the plaintiff. In the second case cited the controversy arose over a heating plant to be installed, for which "the final payment shall be made when the work is completed satisfactory to owner and architect." The right of the owner or architect to reject the work in the absence of bad faith was held to be absolute. In the third case, where a church building was involved, the court held:

"Although the rate of compensation to be finally paid such contractor is to depend on completion of the contract, yet if completion thereof is prevented by the insolvency of the owner, or his neglect or refusal to make the payments as required by the contract, the contractor will thereby be excused from completing the contract on his part, and entitled to his compensation for the part performed."

None of these cases it seems to me meet the facts disclosed in this case. The mere statement of the proposition that the owner under such a contract for mere trifling defaults or at his own will may declare himself dissatisfied, and thereby be permitted to retain, as in this case, over $20,000 of the contract price for all time and at the same time take possession of and receive the use and benefit of the work done, refutes its soundness in morals and good conscience. It has therefore long since been held that substantial compliance with the terms of the contract is all that can be required. This is the holding of the Supreme Court of Appeals in this state in West V. Building Co. v. Saucer, 45 W. Va. 483, 31 S. E. 965, 72 Am. St. Rep. 822. The contract price in this case was $231,698. The claim of the defendant for omitted and defective work is $6,329.06. A number of these items are disputed by the contractors, who claimed in their notice of lien that the owner was only entitled on this account to a credit of $106.80. Admissions made in testimony may increase this somewhat. On the other hand, the contractors claimed $26,122.97 for extras. The owner disputing this claim to the fullest extent, however, substantially admits his liability for $6,155.40 on account of these extras. If we were to admit the whole demand of the owner for the omitted and defective work of $6,329.06, it would be less than 3 per cent. of the whole work represented by the contract price of $231,698 alone, and, if we deduct from this claim the extras admitted by him of $6,155.46, a balance of $173.66 would remain, for which it is contended he is entitled to retain the final payment of over $20,000! Such a position by

the owner is entirely untenable upon its face, if it were not further refuted by such further facts that the owner has taken possession, installed numerous tenants, and is receiving the rents, issues, and profits of the building in large sums. Here, again, it seems to me, the ruling in Jefferson Hotel Co. v. Brumbaugh (C. C. A.) 168 Fed. 867, is exactly in point, and must control. The contention of the defendant in this particular must therefore be overruled.

Some questions arise as to the allowance for extras that must be determined. By the specifications it was provided that "no allowance will be made for extra work, unless the same shall be previously authorized by the issue of an order signed by both the owner and architect"; while the contract itself provides that such extra work should be allowed for only "upon the written order of the architect or owner." Some extra work was done upon the written order of the architects alone, and this the owner now disclaims all liability for insisting that the written order of the architects was worthless unless he joined therein. This contention must be overruled for at least this reason: These specifications were first prepared, as shown by the terms of the contract. They could not have been made a part of the contract, as they were, if they at the time did not exist. The contract, therefore, was the final meeting of the minds of the parties, the final agreement. By the terms of the contract the architects were constituted the agents of the owner and the power to issue these written orders was vested in either the owner himself or in the architects alone. The law will presume that this clause changed and superseded that contained in the specifications; that failure to correct the latter to conform to this change was a mere oversight. The extras performed, therefore, upon the written orders of the architects alone, must be allowed for at their just values.

But it is insisted that some extras were performed by verbal orders of the architects, and allowance for these should be made because the owner has taken possession of the property, is deriving the benefit thereof, and must be held to have waived the requirement in writing of the orders therefor. This contention is most vigorously contested here by the defendant owner. Touching allowances for extras generally; the words of the court in the Jefferson Hotel Case are pertinent here:

"The temptation on the part of contractors to recoup losses on improvident contracts by claims of this kind is frequently present and strong. It is therefore the clear duty of courts to carefully scrutinize such demands and allow them only upon clear and satisfactory evidence sustaining them."

It therefore becomes the duty of the contractor claiming extras to show clearly (a) that they are in fact such; (b) that the prices charged therefor are reasonable; and (c) that they were furnished in compliance with the exact terms of the contract, or else under a waiver of such terms constituting in effect a new and different contract in relation thereto. While these propositions are true, it is not for a moment to be questioned, as held in Copeland v. Hewett, 96 Me. 525, 53 Atl. 36, that, "where a contract provides that neither party thereto shall have any claim for alterations or additions unless first particularly described

in writing, * * * it is competent for either party to waive this provision intended for his benefit," and, "however evidenced, a contract remains in force until it is superseded by a later one inconsistent with it, and no longer; and one who has agreed that he will only contract in writing in a certain way does not preclude himself from making a parol bargain to change it, and there is no more force in an agreement in writing not to agree by parol than in a parol agreement not to agree in writing." Insurance Co. v. Earle, 33 Mich. 143; Canal Co. v. Ray, 101 U. S. 522, 25 L. Ed. 792; Bartlett v. Stanchfield, 148 Mass. 394, 19 N. E. 549, 2 L. R. A. 625. This last case is exactly in point here. It is there held:

"A written contract for building a house, stipulating that no charge for extra work or materials shall be made, unless ordered in writing, will not prevent the contractor from recovering for extra expense incurred on the express agreement of the other party to pay for it, or on his request therefor, under circumstances implying a consent to be liable for it, irrespective of the written contract. Parties cannot, by contract, tie up their freedom of dealing with each other."

If, therefore, extra work was performed by the contractors here, under express oral contract upon the part of the owner personally or by and through his agents, the architects, or under such circumstances implying a consent to be liable therefor, such extra work should be allowed for, but for reasons stated the evidence should be clear, and the burden is upon the contractor to produce it.

But, finally, in this connection, it is insisted that as to these extras the contract provides that, in case of dissent of either party to the values allowed therefor by the architects, the determination thereof should be submitted to arbitration which was not done. Therefore this action was prematurely brought, and must be dismissed. The contention is not tenable for these reasons: First. Independent of all questions of extras, the contractors had a clear right to file their mechanic's lien within a limited time, fixed by statute, against this building for the balance of the contract price, which the owner disputed and refused to pay, and they had the further right, within a limited time, also fixed by statute, to institute this suit in equity to enforce such lien. These extras were contemplated by the contract. They were performed with labor and material furnished either under its express terms or by new and additional oral contracts in connection with the erection of this building and for which the contractors were also entitled to a lien upon the same terms and conditions. Equity having jurisdiction in part will assume it over all and settle the whole controversy by its own methods of procedure which are plenary and comprehensive. Second. Because, as held in Foster v. McKeown, 192 Ill. 339, 61 N. E. 514:

"In an action to recover for extras furnished under a building contract providing that, in case the valuation of such extras by the architect should not be agreed to, the matter should be submitted to arbitration, neither a report of arbitrators nor an offer to arbitrate as to such extras need be shown as a condition precedent to a right of recovery without the architect's certificate, where such certificate was refused, not because of any disagreement as to valuation, but by order of the owner of the property."

This leaves us but one other matter involving legal propositions to consider. As hereinbefore indicated, the lot of ground upon which this building was to be and was erected was surrounded by other buildings, and it was very soon apparent after excavation for the foundation was commenced that extraordinary and expensive measures would be required to protect an adjacent building from damage and destruction. The architect by written order directed these necessary measures to be taken by the contractors. Large sums were expended in this way, clearly extra and not contemplated by the contract. Much of this work, however, was done outside of the exact limits of the owner's lot in strengthening and securing the walls of this adjacent building. It is now insisted that, while there may be a separate personal liability upon the owner for this work in favor of the contractors, the lot of ground and its building so erected under this contract thereon cannot be held liable under a mechanic's lien for such work done outside of the limits of the lot. I cannot agree with this contention. The work in a very technical sense may have been done on ground outside the exact line of the lot, yet it was absolutely essential for it to be done in order that the contract be complied with and the building be erected on the lot. Suppose the wall of the German Bank Building or the building itself had collapsed and fallen into the excavation on this lot. Would not the removal of the débris therefrom have been necessary to the erection of the building? This was precisely what would have happened in all possibility if the wall of this building had not been reinforced. It was not work provided for by the contract directly, but was expressly within its terms touching extras. The condition of this abutting wall could not be known until it was disclosed by the excavation on this lot, and wherein was there any practical difference in the character of the work necessary to cause this wall to stand and the removal of its débris after it had fallen? In this connection it may be proper to note that the courts of this state have changed their position touching mechanics' liens. It was at first held that, this remedy being unknown to the common law, a strict compliance with and construction of the statute was necessary. Mayes v. Ruffners, 8 W. Va. 384; Stout v. Golden, 9 W. Va. 231. It is now held that the statute must be given a fair and liberal construction as to the creation of the lien and its enforcement. United States Blowpipe Co. v. Spencer, 40 W. Va. 698, 21 S. E. 769. Even under the old ruling, in Bodley v. Denmead, 1 W. Va. 249, it was held that "a stack erected in a building used as a porkhouse for the joint purpose of the porkhouse and generating steam and running machinery in a distillery attached thereto, and which can be used as a distillery only in connection with the porkhouse, must be regarded as a structure necessary to both establishments and as a part thereof, although the porkhouse may be used independently of the distillery"; and in that case a mechanic's lien for the stack in the porkhouse was sustained against the distillery lot and building. For similar decisions of other states, see Wilcox v. Woodruff, 61 Conn. 578, 24 Atl. 521, 1056, 17 L. R. A. 314, 24 Am. St. Rep. 222, and note; Menzel v. Tubbs, 51 Minn. 364, 53 N. W. 653, 1017, 17 L. R. A. 815; Maryland Brick Co. v. Spilman, 76

Md. 337, 24 Atl. 297, 17 L. R. A. 599, 35 Am. St. Rep. 431; Sergeant v. Denby, 87 Va. 206, 12 S. E. 402.

In addition to this, the Circuit Court of Appeals for this Fourth Circuit in the case of Canton Roll & Machine Co. v. Rolling Mill Co., 168 Fed. 465, 93 C. C. A. 621, construing our West Virginia statute, has gone farther, in my judgment, in its liberality towards the upholding of mechanics' liens and proceedings to enforce them than has any other court in this country. In that case the contractor for machinery for a tin plate plant contracted to furnish, among other things, 24 chilled rolls absolutely and 24 additional ones, "six pairs to be delivered with the mills, balance when required." Of these last 24, 12 were furnished, and the remaining 12 were not required. On june 25, 1903, the contractor filed its mechanic's lien in the county court clerk's office of Monongalia county, setting forth its account and attached to which was the usual affidavit setting forth that it had ceased to furnish machinery under the contract upon a certain date. Upon this lien, so sworn to and recorded, it instituted in the state court its suit to enforce it against the lot and plant. After it had instituted this suit, it discovered that it had filed its declaration of lien one day too late to comply with the statute, and thereupon it dismissed this suit. (See opinion of court below in the case 155 Fed. 321.) Nearly a year after, when title to the property had passed out of the Tin Plate Company and vested in a trustee in bankruptcy, this contractor knowing this fact, without further order, shipped the extra 12 rolls provided for by the contract, and then recorded a new declaration of lien for its whole account including these 12 rolls, and thereupon instituted its suit in the Circuit Court of the United States to enforce this last declaration of lien, the sole allegation touching which in its bill was:

"Your orator is entitled to and has filed a mechanic's lien for all its said claim of $14,889.98, with interest as aforesaid, against said real estate and manufacturing plant, in accordance with the laws of the state of West Virginia, and claims and is entitled by virtue thereof to a lien on said property."

These 12 additional rolls were never accepted, were never delivered on the ground or nearer to it than the railroad depot, never, of course, installed in the building, and in fact were not expected to be by the contractor when shipped because it knew of the company's bankruptcy. The Circuit Court of Appeals, however, reversing the decree of the court below dismissing the bill, held these rolls to be an integral part of the mill machinery not necessary to be actually installed; that the contractor was not estopped by the filing of the first lien and the oath attached thereto fixing the date when it "ceased furnishing" machinery under the contract, nor from, nearly a year after, "furnishing" this additional machinery in this way, and declaring and asserting a new lien for the whole account, and, further, that the pleading quoted above was sufficient upon which to enforce it. But it may be insisted that such rulings are in direct conflict with those contained in Davis v. Alvord, 94 U. S. 545, 24 L. Ed. 283; Van Stone v. Stillwell & Bierce Mfg. Co., 142 U. S. 128, 12 Sup. Ct. 181, 35 L. Ed. 961; Liberty, etc., B. & L. Co. v. Furbush & Son Machine Co., 80 Fed. 631, 26 C. C. A. 38; Withrow Lumber Co. v. Glasgow Inv. Co., 101 Fed. 863, 42 C. C. A. 61; McGugin v. O. R. R., 33 W. Va. 63, 70, 71, 10 S. E. 36; Cen-

tral City Brick Co. v. Norfolk & W. R. Co., 44 W. Va. 286, 28 S. E. 926; Lunsford v. Wren, 64 W. Va. 458, 63 S. E. 308. Evidently the Circuit Court of Appeals did not think so, for, while its attention was called to all these cases except the last one, decided by the Supreme Court of Appeals of this state since, it neither disapproved these cases nor sought to distinguish them.

It is clear to me, therefore, that under the very great liberality touching the upholding of mechanics' liens indicated by this decision by which I am bound it would be clear error for me to deny to the contractors in this case the benefit of such lien for this extra work on this adjacent wall made necessary to the erection of this building. Let the cause be referred to a master, with directions to state an account from the pleadings and evidence in the cause, showing the true balance and interest due upon the contract; what extras were performed by the contractors under the express terms of the contract by reason of written orders of either owner or his agents, the architects, or under subsequent oral contracts, if any, or under such circumstances implying a consent on the part of the owner to be liable therefor, if any and they be clearly shown by the evidence; also to ascertain the true amount due the owner on account of defective and omitted work, the master to be guided in ascertaining these things by the rules and principles herein set forth. He shall also state the number of claims and their amounts which, by stipulations filed, are agreed to be liens upon any fund found due the contractors.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes