Williams, Judge,
delivered the opinion of the court:
The plaintiff sues to recover $133,099.20, an amount withheld by the defendant as liquidated damages because of alleged delays in the delivery of certain shell manufactured and furnished by the plaintiff to the Ordnance Department of the United States Army, under a contract entered into between the parties on October 24, 1916.
The defendant has interposed a counterclaim alleging there is a balance due from the plaintiff to the defendant under other and different contracts entered into between them.
The contract, which is made a part of the findings of fact by reference, provided that the plaintiff manufacture and deliver to the Ordnance Department of the Army, f. o. b. plaintiff’s works, one thousand seven hundred and fifty 12-inch armor-piercing shell (designated and hereinafter referred to as A. P. shell) at $325 each; and eight thousand five hundred 12-inch deck-piercing shell (designated as D. P. shell) at $242 each, making a total contract price for all the shell, $2,625,750.
The contract provided that deliveries of the A. P. shell should commence one year after the date of the execution of the contract and continue thereafter at the rate of 300 shell per month until complete delivery of the 1,750 shell had been made; that deliveries of the D. P. shell should commence one year after the date of the execution of the contract, 500 shell per month to be delivered during the first four months, and thereafter deliveries to be made at the rate of 1,000 per month until complete delivery of the D. P. shell had been made.
The contract further provided that, in the event of failure on the part of plaintiff to make deliveries of the shell within the date or dates specified for delivery, a deduction as liquidated damages might be made by the defendant for each and every day of delay beyond the date or dates on which deliveries were due, one thirtieth of 1 per cent of the contract price of all due and undelivered material.
The plaintiff manufactured and delivered, and the defendant accepted, the entire lot of 8,500 D. P. shell, and was paid the contract price therefor, less $10,672.20, which the defendant deducted and withheld as liquidated damages on account of delays in the deliveries of certain lots of the shell.
*861 The plaintiff manufactured and tendered to the defendant for acceptance the 1,750 A. P. shell covered in the contract. The defendant accepted 1,617 of the shell and paid plaintiff the contract price for the same less $117,818.84, which amount was withheld as liquidated damages because of delays in deliveries of the shell. The remaining 133 A. P. shell were rejected as defective.
Subsequent to the rejection of the 133 A. P. shell, and after the rest of the shell covered in the contract had been delivered and accepted, the plaintiff and defendant entered into a supplemental contract wherein the 133 defective shell were canceled from the original contract, and it was provided that they should be accepted by the defendant at the rate of $122 per shell, in lieu of the original contract price of $325 per shell. Pursuant to the terms of the supplemental contract the defendant accepted delivery of the 133 defective A. P. shell and paid to plaintiff the agreed price of $122 per shell, less $4,608.16, withheld as liquidated damages because of alleged delays in deliveries of the shell, making the total amount withheld as liquidated damages, $133,099.20.
In computing the delays in deliveries, upon which liquidated damages were withheld in respect to both the D. P. shell and the A. P. shell, the time consumed by the Inspectors of Ordnance in making ballistic tests was included. There was also included in the delays charged in deliveries of the A. P. shell, 200 days during which the production of the shell was interrupted by the suspension order of the Chief of Ordnance.
Article 16 of the Instructions to Bidders, which constitutes a part of the contract, provides:
“ In reckoning liquidated damages for delays in delivery, a lot of projectiles, if accepted, shall be considered as delivered on the day on which the lot is turned over to the inspector, the boxing and marking of the entire lot having been completed; the time from the date of selection by the inspector of projectiles from the lot for ballistic test until notification is received by the contractor of the result of this test will not be considered.”
It is conceded that the number of days consumed by the Government in making ballistic tests was erroneously in- *862 eluded in computing the delays upon which liquidated damages were assessed. The parties have entered into a stipulation that the liability of the plaintiff for liquidated damages on account of delays in deliveries of the D. P. shell was $1,911.80, instead of $10,672.20, the amount withheld by the defendant.
The parties have also stipulated the number of days consumed by the Government in making ballistic tests of the A. P. shell, and the defendant concedes that because of the erroneous inclusion of this time in the computation of the delays in delivery of these shell, and because of the inclusion of the 200 days during which production of the shell was interrupted by the suspension order of the Chief of Ordnance, liquidated damages in the amount of $48,341.68 were erroneously withheld in respect to the A. P. shell.
The parties are, therefore, in agreement that the plaintiff is entitled to a refund of $57,102.08 of the amount withheld by the Government, and the controversy between them, as it relates to the plaintiff’s claim, is confined to two items, viz: (1) $4,608.16 withheld because of delays in delivery of the 133 defective A. P. shell, and (2) $69,477.16, the balance of the amount withheld because of delays in deliveries of the 1,617 A. P. shell.
The 133 defective A. P. shell. — On June 25, 1920, after all the shell covered in the contract had been delivered to the defendant, and had been accepted by it, except the 133 defective A. P. shell, the parties entered into the supplemental contract heretofore referred to. The supplemental contract after referring to the original contract providing for the manufacture of 1,750, more or less, 12-inch A. P. shell recites:
“Article I. The number of 12// A. P. shell model of 1912 called for in the original contract shall be reduced from 1,750 to 1,617 of such shell;
“ That by reason of said reduction in quantity there shall be deducted from the contract price the sum of $325 for each of the 133 shell hereby cancelled from said contract.
“Article II. The contractor agrees to deliver and the United States agrees to accept 133 defective 12" A. P. shell model of 1912.
*863 “The United States agrees to pay the contractor for said 133 defective 12" A. P. shell the sum of $122 each, f. o. b. contractor’s plant.”
There is no provision in the supplemental contract as to the date of delivery of the defective shell, and no provision as to liquidated damages. Delivery of the shell was made on August 10, 1920. In making payment the defendant deducted and withheld $4,608.16 as liquidated damages, computing such damages at the rate of one-thirtieth of 1 per cent of $122 per shell per day for each day’s delay that elapsed between the dates on which the several lots from which the defective shell were taken were due to be delivered under the original contract, and the date on which they were delivered under the supplemental contract.
The plaintiff was not liable for liquidated damages upon the 133 defective shell. They were eliminated from the original contract by the express agreement of the parties. They were not accepted by the Government under the original contract, and the provisions of that contract for liquidated damages did not apply to them. The Government could have required the plaintiff to manufacture and deliver satisfactory shell in place of the 133 defective shell, and had that requirement been exacted of plaintiff the provisions of the original contract as to liquidated damages would have been applicable when delivery of the shell was finally made. The defendant, however, elected not to pursue that course, but chose rather to enter into a new or supplemental contract with the plaintiff by the terms of which the 133 defective shell were cancelled from the original contract and the defendant agreed to purchase them from plaintiff' at $122 per shell. ’ There is no provision in the supplemental contract authorizing a deduction in the price agreed upon for these shell, and the withholding of $4,608.16 as liquidated damages was erroneous.
Liquidated damages on 1,617 A. P. shell. — The first monthly delivery of the A. P. shell was to be completed by November 24, 1917, and all deliveries by April 24, 1918. None of the lots was delivered within the dates specified, there being a delay of 620 days in the delivery of the first lot, of *864 645 days in delivery of the second lot, 614 days in the delivery of the third lot, 629 days in the delivery of the fourth lot, 635 days in the delivery of the fifth lot, and 647 days in the delivery of the sixth lot. The defendant computed liquidated damages for delay in deliveries of the several lots and withheld from the plaintiff the sum of $117,818.84. Of this amount the Government concedes that $48,341.68 was erroneously withheld, leaving $69,477.16 in dispute. The plaintiff contends that the entire delay was caused by the Government and that it was not liable in liquidated damages in any amount.
The plaintiff, not having adequate facilities for the manufacture of the A. P. shell at the time the contract was executed, October 24, 1916, started early in April, 1917, to provide such facilities by the erection and equipment of projectile shop No. 2. On May 10, 1917, after work on this shop had been started, the plaintff was directed by the Secretary of War and the Secretary of the Navy to proceed at once with the investment of approximately $750,000 for machine tools, and approximately $70,000 for buildings to house the same, to manufacture five million pounds of gun forgings within twelve months from that date, actual delivery to begin within six months from date. This order necessitated the building of machine shop No. 9, work upon which was immediately begun and was completed December 1, 1917. During the time machine shop No. 9 was being built, the plaintiff suspended work on projectile shop No. 2, with the result that the facilities for the manufacture of the A. P. shell were not completed until about July 1, 1918. Upon the completion of projectile shop No. 2, plaintiff was equipped with adequate facilities to manufacture the A. P. shell, but on September 12, 1918, before any of the shell had been completed and tendered to the defendant for ballistic tests, the Chief of Ordnance directed plaintiff to suspend the manufacture of such shell and to convert projectile shop No. 2 into a 12" high-explosive shell plant. This was done and for a period of 200 days work upon the production of the A. P. shell was interrupted while the facilities of projectile shop No. 2 were used in the manufacture of H. E. shell.
*865 After the United States entered the war in April, 1917, the defendant placed with, the plaintiff large orders for war material urgently needed by the War and Navy Departments in the prosecution of the war. On April 26, 1917, the Secretary of the Navy informed the plaintiff that he and the Secretary of War had decided that forgings for the destroyers should take precedence over all other work. The plaintiff gave priority to this work and during the period of the contract involved, manufactured and delivered to the defendant 13,987,682 pounds of forgings for the Navy. During the years 1917 and 1918 the plaintiff, on priority orders of the Chief of Ordance, manufactured and delivered to the ■defendant 5,481,505 pounds of army gun forgings.
On June 13, 1918, the acting Chief of Ordance directed the plaintiff that gun forgings for the French army which the plaintiff was then engaged in manufacturing be given priority over the orders of the Ordance Department to the ■extent of 2,000,000 pounds per month. The plaintiff gave priority to this work and between June 29, 1918, and January 20, 1919, manufactured for the French Government .16,757,066 pounds of gun forgings.
During this period the plaintiff also had numerous other large contracts for war munitions with both the Army and the Navy. The evidence shows that all the facilities of its plant were operated at full capacity during the entire time, in an earnest effort to expedite the performance of all its contracts with the Government, precedence being given to the production of material having priority orders.
The evidence leaves no room for doubt that the delay in the deliveries of the A. P. shell resulted from the action of the •defendant requiring the plaintiff, at the time it was engaged in providing the necessary facilities for the manufacture of the shell, to build machine shop No. 9, and to manufacture in such shop and with its other facilities, under priority orders, a vast amount of other material needed in the prosecution of the war. The defendant concedes that liquidated damages were wrongfully withheld for the 200 days in which the manufacture of the A. P. shell was suspended by order of the Chief of Ordnance, but contends the plaintiff has not shown that any part of the remaining delay was *866 caused by reason of the priority orders, or by the interference with the construction of projectile shop No. 2. The facts as we have found them refute this contention. The great scarcity of both labor and material existing at the time-made it impossible for the plaintiff to proceed with the erection of the projectile shop for the manufacture of the A. P. shell and the machine shop for the manufacture of forgings at the same time. In these circumstances the defendant’s direction to the plaintiff to proceed at once with the erection of facilities for the manufacture of forgings was tantamount to-ft direct order to suspend work on projectile shop No. 2 until such time as the facilities for the production of gun forgings had been supplied. The plaintiff complied with this order and was thereby delayed many months in providing the nec-. essary facilities for the production of the A. P. shell, which necessarily resulted in a like delay in deliveries of the shell.. After the completion of these facilities July 1, 1918, the plaintiff was prevented from using them in the production of the shell until April 1,1919. As soon as it was permitted to use such facilities it proceeded promptly to manufacture the shell, and, beginning August 26, 1919, made monthly deliveries of the same at substantially the rate provided in the contract.
In view of these facts, there can be no doubt that the delay of the plaintiff in making deliveries of the A. P. shell was caused by the- action of the Government, in interfering with the building of projectile shop No. 2 in which the shell were to be manufactured, and in requiring the plaintiff, by priority orders, to use its facilities in the manufacture of other-material, and we have so found.
The law is well settled that a contractor is not chargeable with liquidated damages because of delay in the performance of his contract, if the delay was caused by the other party to the contract. United States v. United Engineering, <& Constructing Co., 234 U. S. 236. Even under the defendant’s theory of the case, that the plaintiff was responsible-for a portion of the delays in the deliveries of the shell,, liquidated damages may not be imposed, as the rule is well settled that in cases where the delays have been caused by *867 both, parties to the contract and completion of the contract has thereby been extended beyond the time fixed, the obligation for liquidated damages is annulled, N. Y. Continental Jewel Filtration Co. v. United States, 55 C. Cls. 288; Standard Steel Car Co. v. United States, 67 C. Cls. 445, and the courts will not attempt to apportion such delays between the parties and hold the contractor liable in damages for any portion of the delay. Vilter Mfg. Co. v. Tygart's Valley Brewing Co., 168 Fed 1002; Jefferson Hotel Co. v. Brumbaugh, 168 Fed. 867; Caldwell & Drake v. Schmulbach, 175 Fed. 429. Moreover there is nothing in the record of the case to support the contention that the plaintiff was: responsible for any portion of the delay, determinable or undeterminable.
The plaintiff was not liable in liquidated damages in any amount on account of the delay in deliveries of the 1,617 A. P. shell and is entitled to recover the amount withheld, $117,818.84.
The Government's counterclaim. — The parties have stipulated as to the plaintiff’s liability on the various items of the counterclaim, except as to the item of $64,650.96 growing out of a contract with the Ordnance Department of the Army, designated as P-11586-2923 A. If the defendant is right in its contention as to this item, it is agreed between tlie parties that any judgment awarded the plaintiff on its petition should be reduced by $26,978.66 on account of the entire counterclaim. If the plaintiff is correct in its contention, it is agreed that whatever judgment plaintiff may be awarded on its claim should not be reduced in any amount on account of the counterclaim.
The disputed item grows out of a contract dated July 9, 1918, wherein the plaintiff contracted to manufacture for the Ordnance Department of the United States Army, out of steel to be furnished by the defendant, four hundred thousand 155 m/m Howitzer high-explosive shell. Article X (a) of the contract provided:
“The contractor will fracture the steel bars into unit lengths and forge the same into steel body forgings. * * *
“ Upon the completion or termination of this contract the cost to the United States of steel lost, or spoiled or destroyed *868 through faulty workmanship in the contractor’s plant, will be computed, by the Chief of Ordnance and the total cost thereof will be charged against the contractor and. deducted from any payments to be made to the contractor, or if no such payments remain to be made the contractor shall immediately pay to the United States the cost of such steel.”
During the progress of the work 10,573 forgings, made of steel furnished by the defendant at a cost of $64,650.96, were spoiled in the forging process. The defendant contends the plaintiff is liable for the cost of the steel going into these spoiled forgings.
The plaintiff’s liability to reimburse the defendant for the cost of steel “ lost, spoiled, or destroyed ” is expressly limited to that resulting “ through faulty workmanship in the contractor’s plant.” There' is no proof in the record that the 10,573 forgings, or any part of them were spoiled “ through faulty workmanship in the contractor’s plant.” On the contrary the proof is clear and the findings show, that the number of spoiled forgings, which was less than five per cent of the total number forged, was within the percentage of spoilage incident to this character of work in normal times when the most skilled labor is employed.
The same character of proof is required to establish a counterclaim as is required to sustain any other claim. To recover on this item of its counterclaim it is incumbent on the Government to show that steel furnished by it to the plaintiff, the value of which it seeks to charge the plaintiff, Avas lost, spoiled, or destroyed “ through faulty workmanship ” in the contractor’s plant. It is not enough to show, as the defendant has done, that the steel was lost, spoiled, or destroyed in the contractor’s plant. The words “through faulty workmanship ” modify and limit the words “ lost, spoiled, or destroyed.” It is the duty of the court to give effect, if possible, to every word or phrase of the contract and to avoid a construction that would imply that the parties used meaningless or superflous words, or that they were ignorant of the meaning of the language employed by them. To sustain the counterclaim the court would be compelled to strike the words “ through faulty workmanship ” from the express language of the contract and make it read, “ the cost to the United States of steel lost or spoiled or destroyed in the *869 contractor’s plant * * * will be charged to the contractor.” This would be an amendment of the contract by the court. It is well settled that courts can not amend or alter the terms of the contracts or other written instruments under the guise of construing them.
The counterclaim is dismissed and judgment is awarded the plaintiff on its petition in the sum of $131,187.40 — consisting of $8,760.40 erroneously withheld as liquidated damages in respect to the D. P. shell, $4,608.16 erroneously withheld in respect to the 133 defective A. P. shell, and $117,818.84 erroneously withheld as liquidated damages upon the 1,617 A. P. shell.
It is so ordered.
Whaley, Juclge; LittletoN, Judge; GeeeN, Judge; and Booth, Chief Justice, concur.